CORA HOWE *et al.* by Geo. Torrance, Guardian *ad litem,*

*v.*

LEWIS J. HODGE *et al.*

*Filed at Ottawa October 29, 1894.*

1. WILLS—*intention the rule of construction.* The intention of the testator, as gathered from the language used, is the polar star in the interpretation of a will. Different parts will be compared, and, if possible, a harmonious whole deduced.

2. SAME—*general intent given effect.* The general intent of the tes-tator, if lawful, will be given effect at the expense of any particu-lar intent, that which is most important being, in case of conflict, permitted to prevail.

3. SAME—*words taken in their ordinary sense.* Words and expres-sions in a will are taken in their ordinary, proper and grammatical sense, unless it clearly appears from the will they were used in a different sense.

4. SAME—*intent to dispose of all property, presumed.* Where the words of a will may fairly convey the whole property, no presumption of an intention to die intestate as to any part is allowable.

5. SAME—*no particular form required.* No particular form of words is required in a will, all that is necessary being that the words used show the testator's intention, and what disposition he makes of his property.

6. SAME—*accretions go with the principal.* Where a beneficial interest in land and funds is vested by a will, the rent of the one, and the interest from the other, are mere accretions, which go with the property and vest with it in the *cestui que trust.*

7. SAME—*if limitation over is void, estate vests in first taker.* Where a subsequent limitation over in a will is void, by reason of its being impossible, repugnant or contrary to law, the estate becomes vested in the first taker, discharged of the limitation, according to the terms in which it was granted.

8. RENTS AND PROFITS—*devise of, will pass the land itself.* It is a rule, derived from the feudal law, that an unlimited devise of rents and profits passes the land itself, both in law and equity.

9. PERPETUITIES—*rule against perpetuities stated.* The true form of the rule against perpetuities is, that no interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the time of the creation of the interest.

10. SAME—*object of rule prohibiting.* The true object of the rule against perpetuities is, not to remove restrictions on the immediate conveyance of property, (though that is an incident of it,) but to prevent the creation of interests in remote contingencies.

11. SAME—*trust estates not exempt from rule.* The rule against perpetuities applies as well to trust estates as to legal estates, and trusts for accumulation are confined strictly within the rule. Future equitable interests are subject to the same rule in this respect as similar legal interests.

12. SAME—*the rule against perpetuities applied.* A testator gave his executors certain lands in trust to be sold, and provided that the proceeds, with other moneys, "shall be invested and kept secured on farm lands, the interest being yearly turned into principal, and the fund thus arising shall be divided among all my grandchildren as they shall respectively arrive at the age of thirty years:" *Held,* this clause, standing alone, would be void, as creating a perpetuity.

13. But where there are added to such provision the words, "My intention in disposing of the property named in this paragraph is to divide it equally among all my grandchildren," such added words indicate an intention to give the grandchildren, as a class, an immediate vested, equitable title to the property, which would let in after-born grandchildren, and the whole provision together is valid.

14. SAME—*instance of void limitation over—first taker gets all.* A limitation over that "in case of the death of any grandchild before receiving his or her share," or "in case of the death of any grandchild who may become possessed of property under this will without leaving lineal issue," then the share of such grandchild "shall be equally divided among all my surviving grandchildren," is too remote, and is void, as creating a perpetuity, and the property vests in the first taker discharged of the limitation.

APPEAL from the Circuit Court of LaSalle county; the Hon. GEORGE W. STIPP, Judge, presiding.

On the 25th day of January, 1887, Peter Howe, since deceased, made his last will and testament, in the words and figures following :

"I, Peter Howe, of the county of LaSalle and State of Illinois, do hereby make, publish and declare this my last will and testament, in manner and form following :

"*First*—I direct that my funeral expenses and all my just debts shall be fully paid.

"*Second*—To my wife, Arvilla Howe, I give and devise my present homestead, consisting of one hundred and sixty acres, for her sole use and benefit, for and during her natural life. Further, I give to her, absolutely, all my household furniture, my horse, cow, carriage and harness, and the sum of $20,000 in money.

"*Third*—To my daughter Mrs. Marietta A. Ervin I give and devise all of section three (3), in township twenty-nine (29), north, range two (2), east of the third principal meridian, in the county of LaSalle and State of Illinois, for and during her natural life, and at her decease I give and devise said section three (3) to the lawful issue of said Marietta, their heirs and assigns forever.

"*Fourth*—To my daughter Mrs. Harriet E. Hodge I give and devise lots one (1), two (2) and three (3), being the north-west quarter of section one (1), in township thirty (30), north, range one (1), east of the third principal meridian, in the county of Marshall and State of Illinois ; also the south-west quarter of section six (6), the north-

west quarter and west half of the north-east quarter of section twenty-eight (28), the three last described tracts all being situated in township thirty (30), north, range two (2), east of the third principal meridian, in the county of LaSalle and State of Illinois, for and during her natural life, and at her decease I give and devise all the real estate in this paragraph described to the lawful issue of said Harriet, their heirs and assigns forever.

"*Fifth*—To my daughter Mrs. Ida E. Fowler I give and devise the south-east quarter of section twenty (20), in township thirty (30), north, range two (2), east of the third principal meridian ; the south-west quarter of section twenty-one (21),—except right of way on the east side to pass wagons,—in township thirty (30), north, range two (2), east of the third principal meridian ; and the south-east quarter, and all that part of the south-west quarter of section thirty (30), in township twenty-nine (29), north, range two (2), east of the third principal meridian, lying east of the Illinois Central railroad, all in the county of LaSalle and State of Illinois ; and the north-west quarter of section twenty-three (23), in township twenty-nine (29), north, range one (1), east of the third principal meridian, containing one hundred and fifty-three acres, more or less, in the county of Marshall and State of Illinois, for and during her natural life, and at her decease I give and devise all the real estate in this paragraph described to the lawful issue of said Ida, their heirs and assigns forever.

"*Sixth*—I have already deeded a section of land each to my sons, Jerome and Charles, and now name them here to show that I have not overlooked them.

"*Seventh*—I give and devise all the right I have in fifty acres of land in Tazewell county, Illinois, to my wife, Arvilla Howe, during her life, and at her decease it shall go to our children, as provided by the will of Hezekiah Park.

"*Eighth*—All the rest, residue and remainder of my property, real and personal, and wheresoever situated, 1

give to my executors, hereinafter appointed, in trust, for the following purposes : All my real estate not situated in the State of Illinois, and all my small tracts of less than one hundred and sixty acres in a body, shall be sold, and the proceeds arising from such sales, and all moneys coming to their hands under this paragraph, shall be invested and kept secured on farm lands, the interest being yearly turned into principal, and the fund thus arising shall be divided among all my grandchildren, as they shall respectively arrive at the age of thirty (30) years. So long as any real estate shall remain unsold, the rent or income from it shall be put and kept at interest, and disposed of in the manner provided for the other funds named in this paragraph. But if my executors, in the execution of this trust, shall think it better to divide such lands, or any part of the same, among my said grandchildren, instead of making such sale, they are hereby fully authorized to do so, and divide the proceeds of what they shall sell. My intention in disposing of the property named in this paragraph is to divide it equally among all my grandchildren.

"*Ninth*—It is my intention by this will to direct that no person shall inherit from my children any of the property acquired from me under this will, or by descent, who is not or would not if I were living be related to me by blood.

"*Tenth*—In case of the death of any grandchild before receiving his or her respective share, then the share that he or she would have been entitled to shall be equally divided among all my surviving grandchildren.

"*Eleventh*—In case of the death of any grandchild who may become possessed of property under any or either paragraph of this will, without leaving lineal issue, then what he or she shall have received shall be equally divided among all my surviving grandchildren.

"*Twelfth*—In case of the death of either of my daughters, or if either shall fail to keep the lands herein given

them as a life estate, productive and in good condition, then my executors shall take charge of said land, and pay over the annual proceeds to those entitled thereto.

"*Thirteenth*—If any of my children, or any other legatee or devisee, shall attempt to contest this my will, then he or she so attempting to break or interfere with any or either of its provisions shall be deprived of all benefit under the same.

"*Lastly*, I hereby appoint my sons, Jerome Howe and Charles Howe, executors of this my last will and testament, and revoke all other wills by me made ; and I hereby direct that my said executors shall not be required to give security as such executors.

"In testimony whereof, I, the said Peter Howe, have hereunto set my hand and seal this the twenty-fifth day of January, A. D. 1887.

PETER HOWE.   (Seal.)"

"Signed, sealed, published and declared as and for his last will and testament, by the said Peter Howe, in the presence of us, who, in his presence and in the presence of each other, and at his request, have subscribed our names as witnesses thereto.

A. H. STATELER,<br>HENRY GUNN."

Peter Howe, the testator, died November 11, 1888, leaving him surviving Arvilla Howe, his widow, and five children, his heirs-at-law, namely :   Mrs. Marietta A. Ervin, who was then forty-six years of age ; Mrs. Harriet Elvira Hodge, then forty-four years of age ; Jerome Howe, then forty years of age ; Charles Howe, then thirty-six years of age ; and Mrs. Ida E. Fowler, then thirty-two years of age.   Arvilla Howe, the widow, died intestate soon after the decease of the testator, leaving her surviving the above named children, her only heirs-at-law.   The testator also left him surviving fourteen grandchildren :   One a child of Mrs. Ervin, one a child of Charles Howe, two children of Mrs. Hodge, three children of Mrs. Fowler,

and seven children of Jerome Howe. At the time of the testator's death the oldest of these grandchildren, George O. Hodge, was twenty-one years of age, and the youngest, a son of Jerome Howe, was about one year old. Since the testator's death four of his grandchildren then living have died, all of whom were infant children of Jerome Howe, and one grandchild, a son of Jerome Howe, has been born, hence there are now living eleven grandchildren of the testator. Two of these, George O. Hodge and John W. Hodge, are now of full age, the others are all minors. Since the testator's death two of his daughters, Mrs. Hodge and Mrs. Fowler, have died, both intestate, the former leaving her husband and two sons surviving, and the latter her husband and three children. Lewis J. Hodge, surviving husband of Mrs. Hodge, is administrator of her estate, and Charles H. Fowler, surviving husband of Mrs. Fowler, is administrator of her estate.

The testator died seized in fee of the real estate described in the second, third, fourth and fifth paragraphs of said will. He also died seized in fee of real estate not situated in the State of Illinois; also of real estate of less than one hundred and sixty acres in a body, situated in the State of Illinois; also of other real estate of one hundred and sixty or more acres in a body, situated in the State of Illinois. All the debts of the testator, and the pecuniary and specific legacies given to his wife, have been paid in full. Of the residue of the testator's estate, the personal property and the lands directed to be converted into money now amount to about $200,000, while the tracts of land in the State of Illinois, each of which contains not less than one hundred and sixty acres in a body, including the homestead given to the wife for life, which the court below held is embraced in the residuary clause of the will, are worth some $100,000.

The present litigation arises out of a bill in chancery that was filed by Jerome Howe and Charles Howe, executors, for the purpose of obtaining a construction of the

will. All persons in interest were made parties defendant. The several adult defendants filed answers to the bill, and the infant defendants answered by their respective guardians *ad litem.* The cause was heard on the pleadings and proofs, and the court thereupon made certain findings of fact and entered a decree. The decree of the court was in substance as follows :

And the court being now fully advised in the premises, and on due and mature consideration thereof, doth now adjudge and declare that the real estate mentioned and described in the second paragraph of said will is a part of the residue of said estate ; that so far as said will directs that all of said testator's real estate not situated in the State of Illinois, and all small tracts of less than one hundred and sixty acres in a body, shall be sold, and the proceeds arising from such sale, and all moneys coming to their hands under the eighth paragraph of said will, shall be invested and kept secured on farm lands, the interest being yearly turned into principal, and the fund thus arising shall be divided among all said testator's grandchildren as they shall respectively arrive at the age of thirty years, and so far as said will directs that so long as any real estate shall remain unsold the rent or income from it shall be put and kept at interest and disposed of in the manner provided for the other funds named in said paragraph, and so far as said will directs that if said executors, in the execution of the trust, shall think it better to divide such land, or any part of the same, among said testator's grandchildren, instead of making such sale, they are fully authorized to do so and divide the proceeds of what they shall sell, and so far as said will directs that the property named in said paragraph is to be divided equally among said grandchildren, such directions and trusts are unlawful and void, and ought not to be carried into execution. And the court doth further adjudge and declare that the property, real and personal, given by said testator to said executors in trust, was, upon the death

of said testator, taken and held in trust by said execu-
tors for the heirs-at-law of said testator, and that said
property, or the proceeds thereof, and the interest, rents,
income and accumulations thereon, are now held in trust
for such of said heirs as are living, and for the parties
who have succeeded to the rights of said two deceased
daughters of said testator.  And the court doth order,
adjudge and decree that said executors proceed, without
delay, to render to the probate court of said LaSalle
county an account of their proceedings in the adminis-
tration of the estate of the said Peter Howe, deceased, to
the end that distribution be made among the parties now
entitled thereto of the personal assets in the hands of said
executors, in which distribution the personal property
given to said executors in trust, as aforesaid, or the pro-
ceeds thereof, together with the income and accumula-
tions thereon since the death of said testator, shall be
treated as intestate personal estate, and the rents and in-
come from real estate, and the interest and accumulations
thereon, and the proceeds of sales of real estate, if any
has been sold, and the interest and accumulations thereon,
shall be distributed to the parties entitled thereto, accord-
ing to the laws of this State regulating the descent of real
estate.  And the court doth further adjudge and declare
that the tenth and eleventh paragraphs of said will are
void and of no effect.  And the court doth further adjudge
and declare that in so far as the twelfth paragraph of said
will directs that in case of the death of either of said testa-
tor's daughters then said executors shall take charge of
the lands given them as a life estate and pay over the an-
nual proceeds to those entitled thereto, such direction is
void, and ought not to be carried into execution.  And the
court doth further order, adjudge and decree that said exec-
utors, in due course of administration of the estate of said
Peter Howe, deceased, pay the costs of this proceeding.

Thereupon, Cora Howe and five other infant defend-
ants, by George Torrance, their guardian *ad litem*, appealed

to this court, and by their said guardian *ad litem* made the following assignments of error : First, the court erred in entering a decree finding the eighth clause (residuary clause) of the said will void ; second, the court erred in decreeing that a portion of the property conveyed by the will should be distributed as intestate estate ; third, the court erred in decreeing that the appellants, grandchildren of the deceased, did not take anything under the will ; and fourth, the court erred in rendering the decree entered in this cause.    Afterwards, Jerome Howe, one of the appellees, by leave of court, assigned as cross-errors substantially the same errors as those set out above.

Messrs. MCILDUFF & TORRANCE, for the appellants Cora Howe and others :

The will should be given such a construction, if it can consistently be done, as will render it capable of execution, rather than inoperative.    *Field* v. *Leiter*, 118 Ill. 17.

It should be so construed, if possible, as to give it the effect of disposing of the entire property. *Scofield* v. *Olcott*, 120 Ill. 362 ; 2 Redfield on Wills, 235 ; 2 Jarman on Wills, (R. & T. ed.) 469.

The gift of "all the rest, residue and remainder of my property, real and personal, and wheresoever situated, to my executors, hereinafter appointed, in . trust" for the grandchildren, to be divided among them as they arrive at thirty years of age, creates a vested legacy at the testator's death, with the enjoyment thereof postponed until a future time.    *Andrew* v. *Bible Society*, 4 Sandf. 156 ; 2 Jarman on Wills, 453 ; *Scofield* v. *Olcott*, 120 Ill. 362.

If there be two possible constructions of the eighth clause of the will, one of which will make the provision valid and the other make it void, it is the duty of the court to adopt the first.    Coke on Littleton, 42, 183 ; *Church Warden's case*, 10 Coke, 67 ; *Maury* v. *Iron Co.* 9 Paige, 188 ; *Robert* v. *Corning*, 89 N. Y. 287 ; *Downing* v. *Marshall*, 23 id. 366 ; *Post* v. *Hoover*, 33 id. 553.

The direction to the executors to pay at a future time, the property being given them in trust for the children, does not postpone the vesting.  2 Jarman on Wills, 455.

In this will there is a direct gift to the grandchildren ; but even if there was none, but only a direction to the trustees to pay or distribute in the future, it appearing in the will that such postponement is for the convenience of the fund, the vesting of an interest in the grandchildren would not be postponed.  2 Jarman on Wills, 458-469; *Herbert* v. *Post*, 11 C. E. Greene, 278 ; *Loder* v. *Hatfield*, 71 N. Y. 92 ; *Birdsall* v. *Hewitt*, 1 Paige, 32 ; *Harris* v. *Fly*, 7 id. 421 ; *Collins' Will*, 40 Mo. 287; *Marsh* v. *Wheeler*, 2 Edw. Ch. 163 ; *Fuller* v. *Winthrop*, 3 Allen, 51.

To postpone the vesting of a residuary bequest, a clear intention must be indicated in the will that such is the testator's intention.   Jarman on Wills, 469 ; *Doe* v. *Considine*, 6 Wall. 475 ; Theobald on Wills, (2d ed.) 400.

The property vests in the legatees at the testator's death, when it is to be trusteed or sold, at the executor's option.  *Rogers* v. *Rogers*, 11 R. I. 38.

Where the property vests, it makes no difference how long the enjoyment thereof is postponed.  (*Hale* v. *Hale*, 125 Ill. 399.)  And the fact that the enjoyment of the estate is postponed to a future time does not make the will obnoxious to the rule of law against the creation of perpetuities.  *Lunt* v. *Lunt*, 108 Ill. 307; *Dodson* v. *Hay*, 3 Bro. Ch. 405; *Montgomery* v. *Wordley*, 5 Ves. 522; *Bingley* v. *Broadhead*, 8 id. 416; *Kevern* v. *Williams*, 5 Sim. 171; *Blease* v. *Burgh*, 2 Beav. 221 ; *Seavers* v. *Hartman*, 102 Mass. 5 ; *Converse* v. *Kellogg*, 7 Barb. 590 ; *Kimball* v. *Crocher*, 53 Me. 263.

In this case, all the grandchildren living at testator's death take an immediate vested interest in their shares, subject to a diminution of those shares, as the number is augmented by future births.  (2 Jarman on Wills, 707.) And where the period of distribution is postponed until the legatees arrive at a certain age, the gift applies to those living at the testator's death, and who come into

existence before the first child attains the age when it is entitled to its share, and none others. 2 Jarman on Wills, 721 ; Theobald on Wills, 143, 144 ; 2 Redfield on Wills, 10, 11 ; *Myers* v. *Myers,* 16 Am. Dec. 648 ; *Collin* v. *Collin,* 45 id. 420 ; *Hubbard* v. *Lloyd,* 52 id. 55.

Where the remainder is limited to a class capable of increasing in numbers before the period of distribution arrives, the gift vests at the testator's death in such as then answer the description, subject to open for all after-born members of the class.    *Taylor* v. *Morber,* 29 Me. 455 ; *Yeaton* v. *Roberts,* 28 N. H. 459 ; *Demorest* v. *Hoffer,* 2 Barb. 599 ; *Smiley* v. *Bailey,* 59 id. 80; *Doe* v. *Prevoost,* 4 Johns. 61 ; *McComb* v. *Miller,* 9 Paige, 265 ; *Tarmer* v. *Livingston,* 12 Wend. 83; *Rudebaugh* v. *Rudebaugh,* 72 Pa. St. 271 ; *Harris* v. *Alderson,* 4 Sneed, 254 ; *McCartney* v. *Osburn,* 118 Ill. 403 ; *Mather* v. *Mather,* 103 id. 607; *Handberry* v. *Doolittle,* 38 id. 202.

Messrs. McDOUGALL & CHAPMAN, for the appellant the guardian *ad litem :*

In the following cases a limitation over was held, either directly or by argument, not to be evidence of a vesting :   *Collins' Will,* 40 Mo. 287 ; *Bull* v. *Pritchard,* 5 Hare, 566 ; *Leake* v. *Robinson,* 2 Mer. 362 ; *Fuller* v. *Winthrop,* 3 Allen, 51 ; *Vawdry* v. *Geddes,* 1 R. & M. 203 ; *Murray* v. *Tancred,* 10 Sim. 465 ; *Drake* v. *Pell,* 3 Edw. Ch. 251; *Seibert's Appeal,* 13 Pa. St. 501 ; *Seabrook* v. *Seabrook,* 1 McMul. 201 ; *Vincent* v. *Newhouse,* 83 N. Y. 505 ; *Saunders* v. *Vautier,* 1 Cr. & Ph. 240 ; *Fosdick* v. *Fosdick,* 6 Allen, 41 ; *Hunter* v. *Judd,* 4 Sim. 455 ; *Porter* v. *Fox,* 6 id. 485 ; *Sears* v. *Russell,* 8 Gray, 86.

No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the death of the testator.    Gray on Perpetuities, sec. 214 ; *Fosdick* v. *Fosdick,* 6 Allen, 41 ; *Stephen* v. *Evans,* 30 Ind. 39 ; *Blagrove* v. *Hancock,* 16 Sim. 371 ; *Hall* v. *Hall,* 123 Mass. 120 ; *Coggins' Appeal,* 124 Pa. St. 565.

When the division is postponed on account of the condition of the person, or is annexed to the substance of the gift, the estate does not vest. *In re will of Bennett*, 3 Kay & J. 280 ; 1 Jarman on Wills, 760 ; 2 Williams on Executors, 1051 ; *Bowman* v. *Long*, 23 Ga. 242 ; *Seibert's Appeal*, 13 Pa. St. 501 ; *Scofield* v. *Olcott*, 120 Ill. 362.

A limitation over shows an intent that the estate shall remain contingent until the period for distribution arrives. *Leake* v. *Robinson*, 2 Mer. 362 ; *Willets* v. *Rutter*, 84 Ky. 317 ; *Stephen* v. *Evans*, 30 Ind. 39 ; *Porter* v. *Fox*, 6 Sim. 485 ; 2 Williams on Executors, 1244 ; *Collins' Will*, 40 Mo. 287 ; *Bull* v. *Pritchard*, 1 Russ. 213 ; *Blagrove* v. *Hancock*, 10 Sim. 371 ; *Vawdry* v. *Geddes*, 1 R. & M. 203 ; *Drake* v. *Pell*, 3 Edw. Ch. 251 ; *Seabrook* v. *Seabrook*, 1 McMul. 201 ; *Handberry* v. *Doolittle*, 38 Ill. 202 ; *Banta* v. *Boyd*, 118 id. 168.

When there is no gift but by a direction to pay or divide at a future time or on a given event, or to transfer from and after a given event, the vesting will be postponed until that time has arrived. Williams on Executors, chap. 2, sec. 5 ; *Willets* v. *Rutter*, 84 Ky. 317 ; *Batsford* v. *Kibbell*, 3 Ves. 363 ; *Collins' Will*, 40 Mo. 287 ; *Locke* v. *Lamb*, 40 L. R. Eq. 372 ; *Sansbury* v. *Read*, 12 Ves. 75 ; *Cheveaux* v. *Aislabie*, 13 Sim. 70 ; *Scofield* v. *Olcott*, 120 Ill. 362.

Mr. Winslow Evans, for the appellee Jerome Howe :

The rule against perpetuities was adopted to prevent the locking up and perpetuating of estates by means of springing and shifting uses and executory devises. 2 Washburn on Real Prop. 358.

When the right of possession accrues, the gift or devise is then said to vest in possession—in other words, the time of payment or distribution has then arrived. *McCartney* v. *Osborn*, 118 Ill. 403.

The law favors the vesting of estates, and where there is any doubt as to the time at which the estate was intended to vest, it will be held to vest at the earliest possible time. 1 Jarman on Wills, 799 ; Theobald on Wills, (2d ed.) 400 ; *Doe* v. *Considine*, 6 Wall. 475.

The provisions of paragraph 8 are to be treated as a gift or devise to the grandchildren, with simple directions to pay or divide at the age of thirty years. Hawkins on Wills, 225, 226; *Williams* v. *Clark*, 4 DeG. & S. 472.

If real estate be devised to A "if" or "when" he shall attain a given age, with a limitation over in the event of his dying under that age, the attainment of the given age is held to be a condition subsequent and not precedent, and A takes an immediate vested estate, subject to be divested upon his death under the specified age. Hawkins on Wills, 240; *Edwards* v. *Hammond*, 1 B. & P. N. R. 324; *Bromfield* v. *Crowder*, id. 313; *Roake* v. *Nowell*, 5 Dow, 202; *Roome* v. *Phillip*, 24 N. Y. 463.

It is held that this rule applies also to bequests of personal estate, especially where real estate and personal estate are given together in the same clause. *Raney* v. *Heath*, 5 P. & H. 219; *Hughes* v. *Hughes*, 12 B. Mon. 117; *Collins' Will*, 40 Mo. 287.

If intestacy will result from holding the interests of the grandchildren as contingent, and not vesting, at the death of the testator, this is a strong reason why such construction should not be adopted unless the language of the will absolutely requires it. *Taubenhan* v. *Dunz*, 125 Ill. 529; *Higgins* v. *Dwen*, 100 id. 554; Jarman on Wills, sec. 851.

It has been said if there be a gift besides the direction to pay, a direction to accumulate the income until the time of payment or distribution does not postpone the vesting. *Blease* v. *Burgh*, 2 Beav. 221; *Josselyn* v. *Josselyn*, 9 Sim. 63; *Saunders* v. *Vautier*, 1 Cr. & Ph. 240.

Mr. JUSTICE BAKER delivered the opinion of the court:

The principal controversy in this case is in respect to the disposition which the testator made, or attempted to make, of the residue of his estate. The main questions at issue are these: First, do the trusts declared in the residuary clause of the will offend the rule against per-

petuities; and second, did the testator declare any trust
as to his tracts of land situated in the State of Illinois
which contained one hundred and sixty acres or more in a
body.

The polar star in the interpretation of a will is the in-
tention of the testator. This intention is to be gathered
from the words and expressions used in the will itself.
The different provisions and parts of the instrument are
to be compared with and read in the light of each other,
so as, if possible, to deduce therefrom an harmonious
whole. The general intent of the will is to be carried
into effect at the expense of any particular intent, pro-
vided such general intent is consistent with the rules of
law, for where there are conflicting intents that which is
the most important must prevail.

The general scope and plan of the will under consid-
eration were, first, to make provision for the wife of the
testator; second, to make provision for his children; and
third, to make provision for his grandchildren. By the
second paragraph of the will he gave to his wife a life
estate in the homestead, and gave to her, absolutely, all
his household furniture, his horse, cow, carriage and har-
ness, and $20,000 in money. By the third, fourth and fifth
paragraphs he gave and devised to each of his three
daughters a life estate in a section of land, or in lands
that were equal in quantity to a section, with remainder
over in fee to the children of each, respectively. In par-
agraph 6 he states that he had already deeded a section
of land to each of his two sons, and then in section 8
he manifests clearly that it was his intention that all
the rest, residue and remainder of his property should,
through the machinery of a trust, be appropriated to the
use and benefit of his grandchildren.

In the first part of the paragraph he gives to his exec-
utors, in trust, all the rest, residue and remainder of his
property, both real and personal, and wheresoever situ-
ated. This description includes, as being within the pur-

view of the proposed trust, all the land that the testator owned that was not otherwise disposed of by the will, and not only the land that was located elsewhere than in Illinois, and the tracts of land, wherever located, that contained less than one hundred and sixty acres in a body, but also the tracts of land situated in the State of Illinois that contained one hundred and sixty acres in a body. The testator then proceeds to declare the trust upon which he gives to his executors all the residue of his property, real and personal. He first says : "All my real estate not situated in the State of Illinois, and all my small tracts of less than one hundred and sixty acres in a body, shall be sold, and the proceeds arising from such sales, and all moneys coming to their hands under this paragraph, shall be invested and kept secured on farm lands, the interest being yearly turned into principal, and the fund thus arising shall be divided among all my grandchildren, as they shall respectively arrive at the age of thirty (30) years." Now, what is the scheme of this paragraph of the will as thus far read ? Manifestly it contemplated the formation of a trust for accumulation,—the amassing of an aggregate fund until some one of the grandchildren of the testator should reach the age of thirty years. Of what was this fund to be composed ? The proceeds arising from sales of real estate not situated in Illinois and of small tracts of land of less than one hundred and sixty acres in a body were to be one element of the fund. So was interest to be an element, and also interest upon interest yearly turned into principal ; also all moneys coming to the hands of the executors and trustees under said paragraph 8. This latter would include all moneys on hand or collected that formed a part of the residuary estate, and also the proceeds realized from sales of personal property that formed a part of said residuary estate. Besides this, as we shall shortly see, still other elements were to enter into the formation of this fund.

Said paragraph 8 then proceeds as follows : "So long as any real estate shall remain unsold, the rent or income from it shall be put and kept at interest, and disposed of in the manner provided for the other funds named in this paragraph." It is urged in some of the briefs and arguments of counsel that this last quoted sentence disposes only of the income arising from the lands which the testator had directed to be sold, between the time of his death and the times of sales, and that the expression "so long as any real estate shall remain unsold" can not have reference to lands which he had not authorized the executors to sell. We are unable to see any sufficient reason why said expression cannot have reference to any or all of the lands given to the executors in trust. The testator does not say, "so long as any *such* real estate shall remain unsold," nor does he say, "so long as any *of said* real estate shall remain unsold," nor does he use any like or equivalent language. If he had, then there might be some ground for claiming that the word "such" or the word "said" had reference only to the lands in respect to which power of sale was given in the antecedent sentence. The language here used by the testator is, "so long as *any* real estate shall remain unsold."

The rule is, that in construing a will the words and expressions used are to be taken in their ordinary, proper and grammatical sense, unless it already appears from the will that the testator used them in a different sense. The words "any real estate" are broad enough to include, and do include, the tracts of land in this State that contain one hundred and sixty acres or more, as well as the tracts in this State that contain less than one hundred and sixty acres and the tracts elsewhere located. That which the testator undoubtedly meant and intended was, that the trustees should rent all the lands that were unsold,—those that were under the power of sale up to the respective times at which they were sold, and those not under the power up to the time they were divided among

the grandchildren,—and that the rents or income derived therefrom should be put and kept at interest, and form a constituent part of the trust for accumulation or aggregate fund for distribution. "Remain unsold" can be predicated of the real estate not subject to the power of sale, as well as of the real estate under that power. In fact, if we assume that the intention of the testator was that the trustees should rent or derive income from all the real estate given them by the residuary clause of the will, and put and keep such rent or income at interest so long as such real estate remained under their supervision and control, and regardless of the fact whether such real estate was under or without the power of sale, then it may well be doubted whether he could have selected a terser and more apt phrase to designate the lands in respect to which he expressed such intention than that which he used when he said, "So long as any real estate shall remain unsold." "Remain unsold?" remain where?—in whose hands?—under whose control and management? The phrase is, perhaps, elliptical ; and, if so, that which is omitted is some such expression as "subject to the trust," or "in the possession and under the control of my executors." But upon the whole we are inclined to think that the idea that we have in mind, and that was manifestly in the mind of the testator, is sufficiently indicated, under the circumstances of the trust and of the property, and without supplying any words, by the single and simple word used,—*i.e.*, "unsold."

It is unreasonable, and almost absurd, to suppose that the testator intended that the small tracts of land, while in the possession and under the control of executors, should be a source of income and profit, and at the same time the large tracts of land, while in like condition, not be rented. It is also unreasonable to suppose that the testator intended that his grandchildren should have full possession and control, immediately upon his death, of the large tracts of land, while at the same time he postponed their possession and control of the small tracts of

land, and of the funds derived from the sale or the rent-
ing of the same, until they should arrive at the mature
age. of thirty years.   And besides all this, the literal, or-
dinary and grammatical interpretations that we have
placed upon the words "any real estate," and upon the
words "remain unsold," produce a result which is in strict
harmony and accord with the general plan and scheme of
the testator as developed in this paragraph 8 of the will,
while other theories, urged in the arguments of counsel,
are incongruous therewith.

But this provision of the will now under examination
brings within the purview of the trust declared, not only
the rents or income to be derived from the large tracts
of land situated in the State of Illinois, but also the
lands themselves.   It is not only now the law, but has
been since the days of Lord Coke, that a devise of the
rents and profits or of the income of land passes the land
itself, both at law and in equity; and this rule of property
is founded on the feudal law, according to which the
whole beneficial interest in the land consisted in the right
to take rents and profits. 2 Jarman on Wills, (5th Am. ed.)
chap. 24, p. 403 ; Coke's Lit. 4*b*; Schouler on Wills, sec.
503, p. 506, and authorities cited in notes 4 and 5.

The interpretation we have placed upon this sentence
of the residuary paragraph is fully justified by the lan-
guage used therein, and it is in consonance with the rule
of law that no one is supposed to make his will without
meaning to dispose of all his estate, and that therefore
no presumption of an intention to die intestate as to any
part of his property is allowable when the words of a
testator's will may fairly carry the whole.   Schouler on
Wills, sec. 490, p. 495.

The next sentence of said paragraph 8 reads thus :
"But if my executors, in the execution of this trust, shall
think it better to divide such lands, or any part of the
same, among my said grandchildren instead of making
such sale, they are hereby fully authorized to do so, and

divide the proceeds of what they shall sell." It is, perhaps, more difficult to ascertain with certainty the true intent and meaning of this provision of paragraph 8 than it is to determine the intention manifested in the other sentences of said paragraph. Its language is confused, and its words are scattered in a very awkward way. We will, for the present, eliminate the parenthetical phrase, "instead of making such sale." The testator then says: "If my executors, in the execution of this trust, shall think it better to divide *such* lands, or any part of the same, among my said grandchildren, * * * they are hereby fully authorized to do so." The inquiry arises, *what* lands are referred to? To what lands do the words "*such* lands" refer? In the immediately preceding sentence of the paragraph the testator makes certain provisions in regard to "any real estate" that shall "remain unsold," and, as we have already seen, these phrases have reference to or include all of the lands given to the executors by the residuary clause of the will,—to the lands excepted from the power of sale given in the first sentence of the declaration of trust, as well as to the lands expressly placed under that power; and then, having made said certain provisions in regard to all the lands given in the residuary clause, he immediately, and in the very next sentence, says "such lands." It is evident that these words refer to the real estate spoken of in said preceding sentence, and it follows from this that the executors were fully authorized, in the sentence now under consideration, to divide the tracts of land located in the State of Illinois and containing one hundred and sixty acres or more in a body, and also, if they thought it better, the lands covered by the power of sale, or any part of the same, among the grandchildren of the testator ; and it also follows that the making of such division would be "in execution of the trust." The language of this sentence is, moreover, clearly indicative of the intention of the testator that we have hereinbefore found to be expressed in another sentence,—

*i. e.,* that the equitable or beneficial interest in the large tracts of land in this State should, at least eventually, be in said grandchildren, or in such of them as should attain the age of thirty years.

To recur, now, to the parenthetical phrase hitherto excluded from view, and to the concluding clause of the sentence. The trustees were authorized, should they think it better, to divide all the lands devised to them, or a part of said lands, "instead of making such sale, * * * and divide the proceeds of what they shall sell." The words "such sale," here found, must necessarily relate to the power of sale given in the first sentence of the declaration of trust, for that is the only power of sale given to the executors. There is no authority given them anywhere in the will to sell the tracts of land in this State containing one hundred and sixty acres or more in a body. In other words, the testator first peremptorily directed a sale of specified lands, and he here qualifies that direction by authorizing his executors to divide all the lands given them by the residuary clause,—not only all the lands excepted from the power of sale, but also, if they "shall think it better," all or any part of the lands that were in the first instance directed to be sold.

From each and both of the two sentences of the will that we have last passed in review, it seems to be manifest that it was the intention of the testator that the executors should divide among his grandchildren the large tracts of land in Illinois. This being so, is there anything to show that the trust as to these lands was to differ from the trust imposed on the other lands and the moneys arising from other sources, with respect to the persons who should ultimately take or with respect to the time of distribution? We think not. We find nothing in the will or in the record to indicate that the testator contemplated that a division of these particular lands should be made at the time of or soon after his death. At the date of his will all the grandchildren were minors, and even at his death only one was

of age, and almost all the rest were mere infants, and wholly incapable of themselves managing property. It is unreasonable to suppose that he intended that this part of the residue should be divided at his death, when he so emphatically postponed the division of the great mass of the residue until the grandchildren should respectively attain the age of thirty years. Division at his death means a gift to those, only, of his grandchildren who are then living; and why should he intend to discriminate between the grandchildren living at his death and those born after his decease, with respect to this part of the residue and not as to the rest of it? No reasonable ground based on the language of the will, or based on his general scheme of distribution, can be assigned for such intention. But there are two things which are decisive of this matter. As we have already seen, it was the intention of the testator that the rent and income derived from these large tracts of land should be put and kept at interest, and both rents and interest constitute part of the aggregate fund for distribution; and, as we have also already seen, the executors were authorized by the will to divide among the grandchildren, not only the large tracts of land in Illinois, but also the small tracts of land therein and the lands located in other jurisdictions, and as to these latter, or their proceeds, the time for distribution was deferred to a future period, and it is not to be presumed that he had in view two distributions of his real estate among his grandchildren, especially so when such a conclusion would be inconsistent with the general intention, plan and scope of his will. And so we answer the second of the main questions involved in this litigation, by saying that the testator did declare a trust as to his tracts of land situated in the State of Illinois which contained one hundred and sixty acres or more in a body, and that that trust is the same trust that he declared in respect to all the rest of his residuary estate.

If the whole case rested right here, and there was no further provision in the residuary clause, or elsewhere within the four corners of the will, bearing upon the first of the main questions here at issue, then it would necessarily follow that the trusts declared in said residuary clause offend the rule against perpetuities, and are void. In at least four different cases the rule against perpetuities has been defined by this court, as follows : "A perpetuity is a limitation taking the subject thereof out of commerce for a longer period than a life or lives in being and twenty-one years beyond, and in case of a posthumous child a few months more, allowing for the time of gestation." (*Rhoads* v. *Rhoads*, 43 Ill. 239 ; *Waldo et al.* v. *Cummings et al.* 45 id. 421 ; *Lunt* v. *Lunt,* 108 id. 307; *Hart* v. *Seymour,* 147 id. 598.)   Gray, in his treatise on the Rule Against Perpetuities, (p. 144,) states the true form of the rule to be this : "No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest ;" and on page 194 he says that the true object of the rule is to prevent the creation of interests on remote contingencies, and that its effect in removing restrictions on the immediate conveyance of property is only an incident.

It is, among other things, claimed by counsel for appellants that the disposition made by the will of the residuary estate is not in contravention of the rule, because by the will the legal title to the lands was vested in the executors.   This claim is not well made.   A perpetuity will no more be tolerated when it is covered by a trust than when it displays itself undisguised in the settlement of a legal estate, and courts of equity will not permit limitations of future equitable interests to transcend the limits assigned for the limitation of similar legal interests or executory devises, and shifting and springing uses at law.   (1 Perry on Trusts, secs. 378, 382, 383 ; Gray on Perpetuities, pp. 144, 228 ;  Marsden  on  Perpetuities, p. 4.) And it is also the rule that trusts for accumulation must

be strictly confined within the limits of the rule against perpetuities. 1 Perry on Trusts, sec. 393; Schouler on Wills, sec. 21.

It seems to us that in the case at bar the directions given by the testator with respect to the distribution of the accumulated fund are the same, in effect, as if he had directed the fund to be equally divided among all his grandchildren who attain thirty years of age, or among such of his grandchildren as attain that age. His language is : "The fund thus arising shall be divided among all my grandchildren, as they shall respectively arrive at the age of thirty years." As already suggested, if the whole case of the grandchildren was based upon this provision, then the trust would be void, for the case would be governed by the leading case of *Leake* v. *Robinson*, 2 Mer. 363, which has been followed in numerous subsequent decisions, and was cited and quoted from with approval in *Blatchford* v. *Newberry*, 99 Ill. 45.

In *Leake* v. *Robinson*, Sir WILLIAM GRANT, Master of the Rolls, said : "Having ascertained the persons intended to take, the next question is at what time the interests given were intended to vest. There is no direct gift to any of these classes of persons. It is only through the medium of directions given to the trustees that we can ascertain the benefits intended for them. * * * As to the capital, there being, as I have already said, no direct gift to the grandchildren, we are to see in what event the trustees are to make it over to them. There is, with regard to this, some difference of expression in the different parts of the will. In some instances the testator directs the payment to be to *such* child or children as shall attain twenty-five. In others the payment is to be made *upon* attainment of the age of twenty-five. In the residuary clause it is *from* and immediately *after* such child or children shall attain the age of twenty-five that the trustees are to transfer the property. But I think the testator, in each instance, means precisely the same

thing, and that none were to take vested interests before the specified period. The attainment of twenty-five is necessary to entitle any child to claim a transfer. It is not the enjoyment that is postponed, for there is no antecedent gift, as there was in the case of *May* v. *Wood*, of which the enjoyment could be postponed. The direction to pay is the gift, and that gift is only to attach to children that shall attain twenty-five. * * * It was supposed that the clauses in the will where the word 'such' is left out might be construed differently from those in which it is inserted, and that although where the payment is to be to *such* child or children as shall attain twenty-five, nothing could vest in any one not answering that description, yet where the payment is to children upon the attainment of twenty-five the vesting is not postponed. If there were an antecedent gift, a direction to pay upon the attainment of twenty-five certainly would not postpone the vesting. But if I give to persons of any description *when* they attain twenty-five, or *upon* their attainment of twenty-five, or *from* and *after* their attaining twenty-five, is it not precisely the same thing as if I gave to *such* of those persons as should attain twenty-five? None but a person who can predicate of himself that he has attained twenty-five can claim anything under such a gift. * * * All is to go to those who do attain twenty-five. How is it possible, therefore, that a child can be said to have a vested interest before twenty-five, when it has neither a right of enjoyment, a capacity of transmission, or a ground of claim, until it shall have attained that age? That, etc., etc., etc., are all of them circumstances that appear to me not at all to affect the question of vesting, as none of these clauses makes any new gift to the grandchildren, nor can they alter the terms or conditions of that which had been already made. Then, assuming that after-born grandchildren were to be let in, and that the vesting was not to take place till twenty-five, the consequence is that it might not take

place till more than twenty-one years after a life or lives in being at the death of the testator. * * * On the whole, my opinion is that all the bequests to the grandchildren, as classes, * * * are wholly void."

But in the case at bar, paragraph 8, the residuary clause of the will, closes with this sentence: "My intention in disposing of the property named in this paragraph is to divide it equally among all my grandchildren." This, in our opinion, distinguishes this case from *Leake* v. *Robinson, supra.* There, the direction to the trustees to pay was the gift, and the only gift, and the Master of the Rolls, in the language that he used in delivering his judgment, gave frequent intimations that if there had been, in addition, a "direct gift," an "antecedent gift" or a "new gift" to the grandchildren, his judgment would have been otherwise.

No particular form of words is required in a will. All that is necessary is that the words used by the testator show what his intention is,—what disposition he makes of his property. Here, the language used by the testator is *in præsenti.* At the beginning of the paragraph he gives all of his residuary estate to his executors, "in trust for the following purposes." Then he gives certain directions to his executors in respect to sales of real estate, distribution of the property among all his grandchildren as they shall respectively arrive at the age of thirty years, etc., and he closes the paragraph by saying: "My intention in disposing of the property named in this paragraph is to divide it equally among all my grandchildren." This language clearly points out both the subject and the objects of his bounty, and indicates a gift to his grandchildren, as a class, of the beneficial interest in and equitable title to all of the residuary estate. Such interest and title vested in the grandchildren immediately upon the death of the testator, but subject to open up and let in after-born grandchildren. It will not do to say that the testator conceived that his directions for a divi-

sion among his grandchildren were not sufficiently ex-
plicit, and that he therefore added this last clause for
the purpose of indicating that the property should be
divided among them *equally*.   The language of the direc-
tions that he had already given to the trustees carried
with it the force of a direction to divide equally, and he
must be presumed to have known the meaning of the lan-
guage that he himself had just used.   Nor will it do to
say that there is nothing in the clause that is testament-
ary in itself, or that amounts to a gift independently of
the directions to the trustees.   Strike out all the direc-
tions to the trustees, and leave nothing in the paragraph
except the gift to them "in trust for the following pur-
poses" and this last clause, and you will still have abun-
dant language in the paragraph to pass the beneficial
interest in the residuary estate to the grandchildren.
Nay, more ; it would seem that if such directions were
stricken out, then, there being a mere passive or naked
trust, by force of the Statute of Uses (Rev. Stat. chap.
30, sec. 3,) the legal estate and fee, so far as the lands are
concerned, would be transferred to and vested in the
grandchildren.

This case falls within the rule announced by Lord
Chancellor COTTENHAM, in *Matter of Trusts of the Will of
Thomas Bartholomew*, 1 MacN. & G. 354.   There, a testator,
by his will, directed the investment of £2000, and the
payment of the interest to his daughter for life, and from
and after her death declared that the trustees should
hold the fund upon trust to pay the same or assign the
securities, wherever the same might be then placed or in-
vested, unto, between and amongst all and every the child
and children of his said daughter, as and when they
should severally attain the respective age of twenty-one
years, in equal shares and proportions, share and share
alike, "to whom I give and bequeath the same accord-
ingly."   It was there held that these words contained a
direct gift, independently of the direction to pay, the

words "to whom" referring to all and every the child and children of the testator's daughter, and consequently that a child of the testator's daughter, dying under twenty-one, took a vested interest in the legacy.

Since we have arrived at the conclusion that the beneficial right, title and interest in the residuary estate vested, upon the death of the testator, in his grandchildren, although not to take effect in possession until a future day, it follows that the trusts declared in the residuary clause of the will are not to be regarded as obnoxious to the rule of law for the prevention of perpetuities.

A point is made in respect to the vesting of the accumulations of interest. Where property and the principal of a fund vest in interest upon the death of the testator, the rents from the one and the interest from the other are mere accretions to the property and the fund, respectively, and they equitably belong to the *cestuis que trust*, and go with and vest with the property and the principal of the fund.

In paragraphs 10 and 11 of the will of the testator, provisions are made for conditional limitations in favor of surviving grandchildren. The conditions on which these gifts over are limited are too remote because they may happen beyond a life or lives in being and twenty-one years. They are therefore void. But their being void does not affect the validity of the gifts made in the residuary clause or paragraph. When a subsequent condition or limitation over is void, by reason of its being impossible, repugnant or contrary to law, the estate becomes vested in the first taker, discharged of the condition or limitation over, according to the terms in which it was granted or devised; if for life, it then takes effect as a life estate; if in fee, then as a fee simple absolute. *Proprietors of the Church in Brattle Square* v. *Grant*, 3 Gray, 142; *Taylor* v. *Frobisher*, 10 Eng. L. & Eq. 116 (16 Jur. 283); *Den d. Trumbull* v. *Gibbons*, 2 Zabr. (N. J.) 117.

The circuit court of LaSalle county erred in entering a decree finding and decreeing that the eighth paragraph, or residuary clause, of the will was void, that a portion of the property given by the will should be distributed as intestate estate, and that the grandchildren of Peter Howe, deceased, did not take anything under the will. For these errors the decree is reversed, and the cause is remanded for further proceedings not inconsistent herewith. And it is further ordered that the executors of the estate of Peter Howe, deceased, pay the costs of this appeal in due course of administration.

*Reversed and remanded.*