## Bertha Moore et al., Appellants, v. W. W. McFall et al., Appellees.

1. TRUSTS, § 96*—*when estate given to carry on business.* A testator may appoint by will a trustee to continue a business conducted by him at the time of his decease, may direct what portion of his property is to be so used and may also impress the whole of his estate with the burdens of continuing the business.

2. TRUSTS, § 96*—*how extent of estate to be used is determined.* Where a testator appoints by will a trustee to continue his business, his intention as to what part or how much of his estate is to be devoted to such enterprise must be gathered from the will and the intention must be found in the will itself, and when found must, if possible, be given effect.

3. TRUSTS, § 96*—*when whole estate is involved.* Where a testator by will directs that his business be continued and for such purpose and for the education and support of the widow and children devises all his property to his widow, giving her all powers for the purpose of carrying out the will and providing that on the death or marriage of his wife the property should descend to his heirs, the whole of the testator's property is involved in the trust and not only the property embarked in the business at the time of the testator's death.

4. JUDGMENT, § 556*—*when whole estate is subject to lien.* Where a testator by will directs that his business be continued and for such purpose and for the education and support of the widow and children devises all his property to his widow, giving her all powers for the purpose of carrying out the will, and money is borrowed to continue the business by the widow in partnership with sons, and such creditors obtain judgments, equity will decree the judgments to be liens on any of the property.

Appeal from the Circuit Court of Franklin county; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed October 9, 1913.

THOMAS J. LAYMAN and WILLIAM B. JOHNSON, for appellants.

GEORGE B. GILLESPIE and SPILLER & MILLER, for appellees; GILLESPIE & FITZGERALD, of counsel.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

MR. JUSTICE THOMPSON delivered the opinion of the court.

John J. St. Clair died testate in Benton, Franklin county, Illinois, on December 22, 1880.

This suit arises out of a dispute as to what was the intention and what should be the construction placed on the language used in his will. The controverted part of the will is as follows: "It is my will and desire that my business, hardware, furniture, tin shop and business as transacted by me be continued, and for this purpose and the care and education of my children having confidence in my wife, Rebecca St. Clair, I will and bequeath to said Rebecca St. Clair, my wife, all my real and personal property of whatsoever kind, all title and interest therein, and for the purpose of paying my just debts and education and support of herself and my family, I hereby authorize her, if necessary to sell and dispose of any of said property and real estate without any order or decree of Court, and that she pay all debts that may be just without the intervention of Courts and do and perform all things whatsoever in regard to my property for the purpose of carrying out this will as I might lawfully do, subject however to this condition that in case of the marriage or death of my wife, Rebecca, that my property of all kinds, real and personal shall descend to my lawful heirs at that time being according to law of descent.

And for the purpose of carrying out this will I hereby appoint my wife Rebecca St. Clair, the Executrix of this will without executing bond as such executrix.

I desire my business carried on in the name of St. Clair Brothers and authorize and empower my Executrix to execute deeds of conveyance to property she may desire to sell."

John J. St. Clair died within a few days after executing his will. At the time of his death, and for some years prior thereto, he had been engaged in the hardware, furniture and tinning business in the City of

Benton. He left him surviving his widow and nine children, the oldest child being about twenty-two and the youngest child two years of age. At the time of the testator's death all the children were living at the home except Emma, the oldest, who was married. The next in point of age were Charles and Guy, being aged respectively nineteen and seventeen.

The testator died siezed of lots 3 and 4 in the original town (now city) of Benton, and lots 15 and 16 in the Southeast ¼ of section 18, Township 6 South, for Range 3 East of the Third Principal Meridian, in Franklin County. At the time of his death the testator was occupying said premises as a homestead, and after his death his widow, Rebecca St. Clair, continued to hold and occupy the same as a homestead until her death on February 16, 1912. This suit was commenced by appellants as heirs of John J. St. Clair to partition the said real estate and appellees answered and filed cross-bills claiming liens.

It appears that after the death of John J. St. Clair, the widow formed a partnership with her sons, Charles and Guy, and carried on the business in the name of St. Clair Brothers, for the benefit of the family under the supposed authority given her in the will. The business was thus conducted until sometime in the year of 1897, when the business having become unprofitable the partnership was dissolved. The testator was in debt about $20,000 when he died.

While the business was being conducted by the said widow and sons, and in order to carry on said business, the widow and her said sons borrowed money from appellees, and when the business was suspended in 1897 there was owing to appellee Cantrell, for money borrowed by the partnership and used in the business, $1,000 and interest. This indebtedness was evidenced by a judgment note, and Cantrell took judgment by confession, on September 27, 1897, for $1,196.50, against all of said partners. Cantrell assigned said

judgment to one Ammon, and afterwards repurchased said judgment and by revivor proceedings and issuing execution thereon kept the same alive and seeks in this proceedings to have the same declared a lien on the real estate above described.

Appellees McFall and Whittington were also creditors of St Clair Brothers, and at the May Term, 1904, of the Franklin County Circuit Court, obtained a judgment against all of said partners for $834.68, being the amount of a note and interest given by said partners to said appellees. At the time appellants filed their bill in this case there was pending in the said court a suit to revive said judgment and said suit was still pending when this cause was heard. The court decreed both of the said judgments to be liens on the said real estate sought to be partitioned. From that decree the appellants appeal to this court.

The rights of the parties are conceded to rest upon the construction of the will, and such equities as flow from the attempt of the widow to carry out its provision. The testator had a family of nine children and a wife. Only one of his children was of age when he executed his will. Eight minor children and his wife were to be considered. Their support and education was the thing that concerned him, and he sought by his will to make provision to accomplish that purpose. He directed his wife to continue the business he was engaged in as a means to that end. He placed the whole of his estate in the hands of his wife with specific directions to use it in caring for and educating his children. With expressed confidence in his wife, he gave her all he had without reserve to pay his debts, to carry on the business, and support and educate their children. She accepted the trust and made an honest effort to carry out the expressed wish and will of her deceased husband. She kept the family together and supported and educated the children during their minority. The business was conducted under the name

of St. Clair Brothers, as requested by the will. She associated her two eldest sons in the business with her, and while there was no positive requirement of the will so to do, the intimation was strongly that way, when the testator designated "St. Clair Brothers" as the name under which the business was to continue. The business ran along for about seventeen years, but finally became so unprofitable that it had to be suspended altogether, and when closed up the two debts forming the basis of the two judgments of appellees remained unsatisfied.

The main point relied on by appellants, as error, is the construction given to the will, that the whole of the testator's property was involved in the trust, appellants claiming that only the property embarked in the business at the time of the testator's death was authorized by the will to be used in continuing the business.

A testator may appoint a trustee to continue a business conducted by him at the time of his decease, and may direct what portion of his property is to be so used. He may also impress the whole of his estate with the burdens of continuing such business. The intention of the testator as to what part or how much of his estate is to be devoted to such enterprise must be gathered from the language employed in the instrument creating the trust. The intention must be found in the will itself, and when found must, if possible, be given effect.

In the case of *Auger v. Tatham*, 191 Ill. 296, the following language is quoted approvingly: "Cases on wills may guide us to general rules of construction, but unless a case cited be in every respect directly in point and agree in every circumstance it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." To the same effect, *Howe v. Hodge,* 152 Ill. 252; *Welch v. Wheelock,* 242 Ill. 380.

A careful reading of this will forces the conclusion that the testator intended to place without reserve all of his property in the hands of his wife to be used for the support of herself and for the support and education of his children, coupling therewith a positive direction that she should continue the business. All his assets, special and general, were pledged to the business under the evident hope that the income would meet the requirements of the family and procure the benefits for them according to his expressed wish. The residuary clause strengthens this view. It was all trust property.

A court of equity will lay hold on any property so placed in the hands of a trustee, to satisfy an honest debt created in the execution of an express trust. The evidence shows that both these sums of money were borrowed to carry on the business, and were used for that purpose. No rule of law has been pointed out which prohibits the application of equitable principles. It would be inequitable to defeat appellees' claims and the decree of the trial court will be affirmed.

*Affirmed.*