CHARLES C. HEISEN, Defendant in Error, *vs.* A. C. ELLIS, JR., *et al.*—(VIOLET HAMBLY, Plaintiff in Error.)

*Opinion filed December 21, 1910.*

1. WILLS—*testator's intention should not be given effect if it violates the rule against perpetuities.* If the testator has by the language used in the will attempted to create an estate which is in violation of the rule against perpetuities, courts are not justified in frittering away such rule by construction in order to give effect to the intention of the testator, but the entire will must be considered in ascertaining the testator's intention.

2. SAME—*of two possible constructions, the one upholding the will is preferred.* If the language of a will is susceptible of two constructions, one of which will render the will valid and the other render it void, the former construction will be adopted if it can be done without defeating the intention of the testator.

3. SAME—*when executors take as executors and not as trustees.* Under a residuary clause of a will providing that all the rest and residue of the testator's estate after the payment of bequests shall go to the executors, to be held by them in trust for the purpose of assigning, transferring, conveying and delivering the same to the regents of a named university as a perpetual endowment fund, the executors take as executors and not as trustees, and exercise their powers and duties with reference to the property in their capacity as executors.

4. SAME—*when will does not violate rule against perpetuities.* Where a residuary clause provides that "the rest, residue and remainder of my estate, both real and personal and wherever situated, after the payment of said bequests as aforesaid, I give, devise and bequeath unto the executors of this my last will and testament hereinafter named," etc., the title vests in the executors immediately, subject to the payment of the bequests, as the words "after the payment of said bequests" refer to the quantum of the estate devised and not to the time when title shall vest. (*Johnson v. Preston,* 226 Ill. 447, distinguished.)

WRIT OF ERROR to the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

ROBERT F. KOLB, for plaintiff in error.

LACKNER, BUTZ & MILLER, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Defendant in error, Charles C. Heisen, filed his bill in chancery against A. C. Ellis, Jr., and Lewis B. McCornick, as executors of the last will and testament of Jennie D. Thompson, deceased, and Lackner, Butz & Miller, their agents and attorneys in fact, praying an injunction restraining them from forfeiting a certain lease held by complainant to certain premises on Dearborn street, in the city of Chicago. The bill alleged that the complainant leased the premises May 1, 1891, from Mary Young, the then owner, for a term of ninety-nine years, at an annual rental of $3000, payable in quarterly installments on the first day of May, August, November and February of each year; that complainant took possession of the premises and afterwards Mary Young died and Jennie D. Thompson became seized and possessed of said real estate; that about October 29, 1907, the said Jennie D. Thompson died leaving a will, in which Ellis and McCornick were named as executors, but the original bill alleged the will had not been probated and no letters testamentary had been issued thereon. The bill alleged that Lackner, Butz & Miller, acting as agents and attorneys for Ellis and McCornick, about October 16, 1909, served a written notice on complainant declaring his lease had been forfeited by reason of his default in the payment of the quarterly installment of rent due August 1, 1909, and on the same day said agents and attorneys demanded immediate possession of the premises and began forcible detainer proceedings therefor in the municipal court of the city of Chicago. The bill alleged that the lease provided

for forfeiture, without demand or notice, for default in the payment of rent for thirty days, but further alleged that all rent had been paid to August 1, 1909, and that many payments had been made after the time stipulated in the lease and the lessor and executors had never sought to forfeit it because of a failure to pay the rent in accordance with the provisions of the lease; that they never intimated they would take advantage of said clause, but by repeatedly accepting payment long after it became due they induced complainant to believe no advantage would be taken of his failure to pay the rent promptly according to the terms of the lease, and thereby induced him to exercise less vigilance and promptness in the payment of rent than he would otherwise have exercised; that his failure to pay the rent was not willful but was due to inadvertence and oversight and to the long continued custom between the parties. The bill alleged the complainant had tendered the rent due, with interest thereon from the time it became due; that it had been refused by defendants, and the complainant brought it into court and made tender thereof. The bill further alleged complainant was preparing to erect a twenty-story building upon the premises; that he was then having plans drawn and excavations for the foundations made, had entered into a contract for the razing of the old building on the said premises and the erection of a new one, and had arranged for a loan of $1,500,000 therefor, at an expense of $6800, most, if not all, of which facts defendants knew. The executors and Lackner, Butz & Miller were duly served with process and filed their answer. Afterwards, on March 7, 1910, Heisen filed an amended bill, in which he alleged that the will of Jennie D. Thompson was duly admitted to probate in the county of Salt Lake, Utah, November 23, 1907, and letters testamentary issued to Ellis and McCornick; that a duly authenticated copy of the will was filed in the probate court of Cook county, Illinois, February 18, 1908. The will is set out in the bill. The will, which will

be hereafter more fully referred to, provided for the pay-
ment of testatrix's debts, the erection of a monument and
the payment of six bequests in money, amounting, in the
aggregate, to $19,000, and the order in which said bequests
should be paid.  It authorized the executors to sell the tes-
tatrix's personal property and her real estate in Salt Lake
City, Utah, for the payment of the debts, cost of the monu-
ment and the bequests, and the residue of her estate she
devised to her executors, to be conveyed by them to the
regents of the University of California.  The bill then al-
leges that the estate attempted to be created in Ellis and
McCornick is in violation of the rule against perpetuities
and void; that Jennie D. Thompson died without issue and
her next of kin is plaintiff in error, Violet Hambly, a sis-
ter of the testatrix, residing in Bradford, Pennsylvania;
that the executors had discharged all their duties as execu-
tors; that they had paid off the charges and liabilities of
the estate, erected the monument and had paid to the bene-
ficiaries all the bequests made in the will; that if the at-
tempted disposition of the residuary estate was not void,
the title thereto was not in the executors but was in the
regents of the University of California and the executors
had no power to declare a forfeiture of the lease; that if
the attempted disposition of the residuary estate is void,
then the title thereto vested in plaintiff in error, Violet
Hambly, as the sole heir of Jennie D. Thompson, deceased,
and she would be entitled to the rents under the lease.  The
bill prayed a construction of the will and a determination
whether the residuary clause of the will constituted a per-
petuity and was therefore invalid, and whether the title
vested in the regents of the University of California, and
to whom, as successors in title, the complainant was au-
thorized to pay the rent in the future.  Plaintiff in error,
Violet Hambly, and the regents of the University of Cali-
fornia were made parties defendant to the amended bill.

On February 23, 1910, Heisen, the complainant, made an affidavit that Violet Hambly was a non-resident of the State of Illinois and that she resided in the city of Bradford, State of Pennsylvania. The affidavit was sworn to before a notary public in Garland county, Arkansas, and was filed with the clerk of the court where the suit was pending on March 7, 1910. Publication was made of the pendency of the suit, and on March 28, 1910, notice was duly mailed by the clerk to Violet Hambly, addressed to her at her place of residence as stated in the affidavit. The executors, Lackner, Butz & Miller, (their attorneys,) and the regents of the University of California, filed demurrers to the amended bill on March 25, 1910. Plaintiff in error was defaulted on May 4, 1910. On May 6, 1910, the demurrers were withdrawn and all the parties except plaintiff in error filed answers to the bill. A decree was then entered. The decree recites the service, by publication, on plaintiff in error, her default, and a hearing of the case upon oral and documentary proofs offered in open court. The decree finds that the complainant was entitled to the relief prayed and enjoined the prosecution of the forcible detainer suit for the possession of the premises. The decree further finds that Ellis and McCornick had fully per-. formed their duties under the will, and had conveyed, in accordance with its provisions, the title in fee of the premises to the regents of the University of California, subject to the terms of the lease held by complainant, who had paid all arrears of rent and was re-instated in all his rights in the premises, according to the terms and conditions of the lease, for the full remainder of the term. The decree further found that plaintiff in error had no right, title or interest in said premises, or any part thereof, and no right to receive the rent due or to become due thereafter. The decree was entered May 6, 1910, and on June 4, which was during the same term of court, leave was given counsel for the plaintiff in error to file a certificate of evidence within

thirty days. A motion was also made by plaintiff in error to vacate and set aside the default and decree, and this motion was continued to the next term of court, when it was overruled, and Violet- Hambly has brought the case here for review by writ of error.

It is first contended that the court had no jurisdiction of the person of plaintiff in error, because, it is claimed, the affidavit of non-residence was not filed within a reasonable time after it was sworn to in the State of Arkansas, and because it contained no certificate of the officer who administered the oath that he had authority, under the laws of the State of Arkansas, to administer an oath, and no evidence otherwise was produced of such authority in a notary public in said State of Arkansas, prior to the entry of the decree. We shall not determine this question, as the other branch of the case is the one the plaintiff in error is particularly desirous of having passed upon. In her brief her counsel say: "We are particularly desirous of having this court pass upon the question of whether or not the will of Jennie D. Thompson, deceased, violates the rule against perpetuities, because if it does not, there is no need for Violet Hambly to further prosecute her suit, even though this decree must be reversed for want of jurisdiction over her." We therefore take up consideration of the important question involved in the case.

The first eight paragraphs of the will contain directions for the payment of the testatrix's debts, the erection of a monument, and certain money bequests. The ninth paragraph directs the order in which the money legacies should be paid. The tenth, eleventh and twelfth paragraphs of the will are as follows:

"*Tenth*—I hereby direct and enjoin upon the executors of my estate to reduce to cash, as soon after my death as may be proper in order to obtain a fair and reasonable price therefor, all my real estate situated in Salt Lake City, Utah, and also my personal estate, and from the proceeds

thereof I direct my said executors to pay, first, all the indebtedness of my estate and to provide for the monument in this will specified; and second, to pay the above bequests in the order named herein. And if the proceeds of the sale of my said real estate shall be insufficient to pay all of said bequests, I direct my executors to use the income of my property situated on Dearborn street, Chicago, Illinois, to pay any balance on said bequests, or any of them.

"*Eleventh*—All the rest, residue and remainder of my estate, both real and personal and wherever situated, after the payment of said bequests as aforesaid, I give, devise and bequeath unto the executors of this my last will and testament, hereinafter named, to be held by them in trust for the following uses and purposes, namely: To assign, transfer, convey and deliver all of said property, both real and personal, unto the regents of the University of California as a perpetual endowment fund, to be known as and called the 'Willard D. Thompson Memorial Fund,' for the purpose of establishing and founding scholarships for the higher education of worthy young men and women residents of Utah and who shall have completed at least a four years' course at some high school of recognized standing. The beneficiaries of said memorial fund shall be ascertained and determined in such manner as may be prescribed and dictated by the said regents of the said University of California, or by the president and academic council, or committee thereof, of the said University of California. And whereas, a portion of my said real estate consists of real estate situated on Dearborn street, Chicago, Illinois, which is under lease for a term of ninety-nine years, about eighty years of which term are yet to run; and whereas the said real estate cannot be sold for any sum approximating the amount for which the same may be sold at or near the termination of said lease, it is my wish and desire, and I hereby enjoin and direct, that said Chicago real estate be not sold during the term or continuance of said lease, but

that the income therefrom be devoted to the purposes of such memorial during the term of said lease, and that thereafter the said real estate be held and disposed of as shall then seem proper to the said regents of said University of California, for the education of young men and women of Utah, as aforesaid; but in no event shall the principal of said endowment fund be devoted to any purpose, it being my wish that only the income of such memorial fund be so used, in order that this endowment may be lasting.

"*Twelfth*—I hereby nominate, constitute and appoint A. C. Ellis, Jr., and Lewis B. McCornick, of Salt Lake City, Utah, as the executors and trustees of this my last will and testament, hereby authorizing and empowering them to sell, compromise and adjust any claims due to my estate in such manner and upon such terms as they may deem best; also authorizing and empowering my said executors and trustees to execute and deliver deeds in fee simple to any real estate of which I may die seized, as aforesaid, and to do all that may be necessary in connection with my estate in order to carry out the provisions of this my last will and to cause the establishment of said memorial to my son."

No property other than the Dearborn street lot in Chicago, upon which Heisen has a long-term lease, is involved in this litigation. That property was attempted to be disposed of by the residuary paragraph of the will.

Plaintiff in error contends that the executors took no immediate title to the property under the will; that their title to the property in dispute was a future one, preceded by no other estate; that the time when the title was to vest in them was contingent upon the payment of the legacies provided in the will, which might or might not happen within a life in being at the time of the death of the testatrix and twenty-one years thereafter, and in case of a posthumous child a few months more, allowing for the period of gestation. Upon this ground, and no other, it is insisted that the devise made by the residuary paragraph

of the will is void, as the event upon the happening of
which the title is to vest in the executors is too remote and
the devise violates the rule against perpetuities. We will
treat the case as presented by counsel in their brief and
argument.

It will be seen the tenth paragraph of the will directs
the executors to reduce the personal estate and the Salt·
Lake City real estate of testatrix to cash as soon after her
death as it can be done for a fair and reasonable price, and,
after the payment of the debts and the cost of the monu-
ment, to pay the bequests in the order mentioned in the
will, and if the amount received from that source should
be insufficient to pay all the said bequests, the executors
are directed to use the income from the Chicago property
to pay the balance. By the residuary paragraph the testa-
trix devised and bequeathed to the executors all the rest,
residue and remainder of her estate, real and personal, to
be held by them in trust, for the purpose of assigning,
transferring and conveying it to the regents of the Uni-
versity of California. Plaintiff in error insists that the in-
tention of the testatrix was, and the legal effect that should
be given to the words used by her is, that the devise of the
residue of her estate to the executors "after the payment of
said bequests, as aforesaid," did not vest immediate title in
the executors, but title was to vest in them only after the
bequests were paid. The argument is made that Ellis and
McCornick were made both executors and trustees, and
that their rights and duties in these capacities were entirely
different; that they acted in the capacity and were clothed
with the powers of executors until the legacies were paid,
and then the title to the residuary estate was to vest in
them as trustees, to be conveyed to the regents of the Uni-
versity of California. The word "trustees" is used in the
twelfth paragraph of the will but is not found anywhere
else in that instrument, and we find no warrant for holding
that the testatrix intended by the use of that word, in the

sense and connection in which it was used, to appoint Ellis and McCornick trustees and vest them with title to property and duties to perform separate and distinct from their title and duties as executors. It will be observed that the devise in the residuary paragraph is to "the executors of this my last will and testament, hereinafter named," to be by them conveyed to the regents of the University of California. If they took any title under the devise they took it as executors, and the powers conferred and duties enjoined upon them with reference to the property was in their capacity as executors.

We do not consider the construction of the will contended for by plaintiff in error the necessary or reasonable construction that should be given to that instrument. If the intention of the testatrix was that the title to her residuary estate should vest immediately in her executors, charged with and subject to the payment of the legacies, and the language used by her is sufficient to give effect to that intention, then it is not denied that plaintiff in error is without interest in the property. In our opinion the reasonable construction of the devise of the residue of testatrix's estate after the payment of the legacies has reference to the quantum of the estate devised and not to the time when the title should vest. As we construe the will, the title vested in the executors immediately, subject to and charged with the payment of any balance of the legacies, except the Chicago property, and as to that, only the income from it was charged with such payment. There can be no doubt of the intention of the testatrix that the residuary estate should not go to plaintiff in error but should go to the regents of the University of California. By her will testatrix gave plaintiff in error a legacy of $5000, and the bill alleges, and the decree finds, that all the legacies provided in the will had been paid to the legatees. If the construction be given the will contended for by plaintiff in error then the intention of the testatrix must be defeated.

It is a familiar rule of construction that the law favors the vesting of estates rather than that they should be held contingent. (*Ducker* v. *Burnham,* 146 Ill. 9; *Kirkpatrick* v. *Kirkpatrick,* 197 id. 144.) In *Chapman* v. *Cheney,* 191 Ill. 574, this court said (p. 583): "It is the duty of the court, in construing a will, to ascertain as nearly as possible the intention of the testator as disclosed by the instrument, and to give it such a construction as will carry such intention into effect. It is, of course, true, that the will cannot carry into effect the intention of the testator in violation of law, and if any of the provisions of the will in controversy violate the rule against perpetuities such provision or provisions must be declared void, for it is the duty of courts to enforce the rule and not to fritter it away by adverse construction. But when a will is susceptible of either of two constructions without doing violence to the intention of the testator as disclosed by the instrument, one of which would render the instrument void and the other valid, that construction should be adopted which would enforce the will as a valid instrument, and not that which would defeat its operation." In *Scofield* v. *Olcott,* 120 Ill. 362, the court said (p. 374): "It has long been a settled rule of construction in the courts of England and America, that estates, legal or equitable, given by will should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent on a future event." This language was quoted with approval in *Hawkins* v. *Bohling,* 168 Ill. 214.

Another rule in the construction of wills too familiar to require the citation of authorities is, that the intention of the testator is to be ascertained from a consideration of the entire will, and when ascertained is to be given effect unless it is in violation of a rule of law. If the language used by testatrix in her will attempted to create an estate that was in violation of the rule against perpetuities, the court would not, as said in *Chapman* v. *Cheney, supra,* be

justified in frittering away the rule by adverse construction in order to give effect to the intention of the testatrix. Here, however, as we construe the will, the language meant to, and did, immediately vest title to the residuary estate in the executors, and to give it any other construction would defeat the intention of the testatrix. In our opinion the only reasonable construction to be given the language used in the will is, that the title vested immediately in the executors and was not postponed to such time as the legacies should be paid. We do not think it is susceptible of any other construction, but if it were, it is certainly susceptible of the construction we have placed upon it, and where a will is susceptible of two constructions, one of which will render it valid and the other void, courts' will, if they can do so without doing violence to the intention of the testator, adopt the construction that will render the will valid. *Chapman* v. *Cheney, supra; Schuknecht* v. *Schultz,* 212 Ill. 43.

*Johnson* v. *Preston,* 226 Ill. 447, relied upon by the plaintiff in error, is not in conflict with the views we have expressed. In that case the testator devised a farm to his executor, to hold for the space of twenty-five years "from and after the date of the probate of this will," and it was held that the title of the executor could not vest until the will was probated. There was no other clause or provision in the will that indicated he intended the title to vest before that event. In the will before us, as we have before said, the will vests title immediately in the executors.

The superior court properly held that plaintiff in error had no title or interest in the property in controversy, and its decree is affirmed.    *Decree affirmed.*