(No. 22648.— ■■■■■■■■■■
JACOB GEHLBACH, Appellee, *vs.* GUSTAV BRIEGEL, Appellant.

*Opinion filed December 19, 1934—Rehearing denied Feb. 13, 1935.*

STONE and FARTHING, JJ., dissenting.

FRANK K. DUNN, and LELAND P. MILLER, for appellant.

TRAPP & TRAPP, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

On April 30, 1888, Jacob Gehlbach, the father of the complainant, (appellee,) together with his wife, Louisa, conveyed to their daughter Henrietta Ann Briegel and Gustav Briegel, her husband, a quarter-section of land in Logan county, Illinois. The *habendum* in that deed is the source of the present litigation and contained the following language: "For and during their lifetime, then to the heirs of the body of our daughter, Henrietta Ann Briegel, and if she leaves no child or children surviving her, then to her heirs according to law." The grantor in that deed died six years later, leaving as his heirs twelve sons and daughters, including the complainant, and two grandchildren, the children of a daughter who died before him. Several of his sons and daughters who survived him have since died leaving children or grandchildren. Louisa Gehlbach, Jacob's widow, died May 9, 1899, and the daughter Henri-

etta died December 11, 1932. She never had any child or children, and there was therefore no surviving heir of her body. She left a will, which was proved and admitted to probate and which devised all of her real estate to Gustav Briegel, her husband, who is the appellant in this case.

This litigation was started by the filing of a bill for partition by Jacob Gehlbach, a son of the grantor in the deed above mentioned, which sets forth the interests in the premises averred to be owned by each of the parties to the bill and alleges that all of those interests are subject to the life estate of Gustav Briegel. The prayer is for partition in the usual form. The defendants include all the numerous heirs of Jacob Gehlbach, Sr., the original grantor, and the bill sets forth the interests of those heirs, which are alleged to be identical with the interest of the complainant. The only adverse interest set forth is that of the defendant Gustav Briegel, one of the grantees in the original deed, who claims that he is the sole owner in fee simple of the real estate involved. His general demurrer to the bill was overruled, a decree of partition was entered, and from that decree this appeal is taken.

The errors assigned are the overruling of the demurrer and the entry of the decree.

It is appellant's contention and theory that the deed conveyed an estate to Henrietta and Gustav Briegel for their joint lives, with the remainder in fee to Henrietta's surviving children, which remainder was contingent and never vested because of her never having had a child; that the words "heirs according to law," in the granting clause of the deed, "if she leaves no child or children surviving her, then to her heirs according to law," under the rule in *Shelley's case* are words of limitation and convey a remainder in fee to Henrietta, which was expectant on the termination of her life estate and contingent on the event which actually happened—of her death leaving no child or children surviving her; that the effect of the deed was to grant,

first, a life estate to Henrietta and her husband; second, a contingent remainder to her children in fee, which never vested; third, a contingent remainder in fee to Henrietta which could not vest in possession until the determination of the preceding contingent estate, and therefore could not merge with the life estate until the event upon which it depended occurred; that these remainders were alternative and depended on the event of Henrietta dying with or without children, and that when she died without children, *eo instanti* the contingent remainder passed to Gustav Briegel by virtue of her will and became vested in him in fee.

Appellee contends, and the trial court held, that the rule in *Shelley's case* does not apply and that any discussion of it is unnecessary to a decision of this case; that the deed created two life estates, with alternative contingent remainders; that the fee remained in Jacob Gehlbach, Sr., during his lifetime and in his heirs after his death, not vesting until the determination by the death of Henrietta Briegel of the contingency as to the ultimate taker. The question thus presented to us amounts to these two points: (1) Does the deed from Jacob Gehlbach, Sr., express a definite intent as to the devolution of this title with sufficient clearness to be readily ascertainable from the face of the instrument itself? And if so, (2) Does the rule in *Shelley's case,* or any other rule of law, prevent that intent from being carried into effect?

On the first point we do not believe any serious doubt can be raised. To us it is clear that Jacob Gehlbach intended his daughter and son-in-law to have the use of this land during their lives and the life of the survivor of them. At this point in time—*i. e.,* upon the death of the survivor— he wished the property to pass in possession as well as in fee to his daughter's children, the issue of her body, if she should have any who might survive, to receive such title, this being the first aspect of the alternative contin-

gency. It was further his wish that if his daughter had no child or children or none surviving her, then that the property might descend in the Gehlbach blood, giving to her surviving husband only such portion as the laws of descent might provide. Our conclusion on this point is not disputed by the briefs of either party. It is contended, however, that the rule in *Shelley's case,* which has always been recognized as in derogation of the intent of a grantor or testator, prevents this result; that by the operation of that rule the fee to the remainder pending the determination of the contingencies controlling its final vesting in possession was theoretically in the daughter, lying there dormant, to merge instanter upon her death, by virtue of her last will and testament, with the continuing life estate of her surviving husband.

The remainders created in the deed to Henrietta Ann and Gustav Briegel were contingent remainders with a double aspect. (*Ætna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406; *Farmer* v. *Reed,* 335 id. 156.) Where a grant is of a life estate with contingent remainder or remainders the reversion is in the grantor and descends to his heirs-at-law. (*Peterson* v. *Jackson,* 196 Ill. 40; *Bender* v. *Bender,* 292 id. 358; *Matthews* v. *Andrew,* 290 id. 103; *Belding* v. *Parsons,* 258 id. 422; *Bond* v. *Moore,* 236 id. 576.) The rule in *Shelley's case* does not apply where the remainder is contingent. (*Bails* v. *Davis,* 241 Ill. 536; *Robeson* v. *Duncan,* 74 N. J. Eq. 745, 70 Atl. 685; *Cotton* v. *Mosely,* 159 N. C. 1, 74 S. E. 454, 40 L. R. A. (n. s.) 768; *Wescott* v. *Meeker,* 144 Iowa, 311, 122 N. W. 964, 29 L. R. A. (n. s.) 947; *Doyle* v. *Andes,* 127 id. 36, 102 N. W. 177, 69 L. R. A. 953; 4 Kent's Com. p. 218; Fearne on Contingent Remainders, p. 25; *Perrin* v. *Blake,* Hargrave's L. Tr. 503, 504; *Campbell* v. *Rawdon,* 18 N. Y. 412, 420.) A contingent remainder is not devisable where the contingency is as to the person who is to take and not as to the event. *DuBois* v. *Judy,* 291 Ill. 340, 349; *Drury*

v. *Drury*, 271 id. 336; *Blackstone* v. *Althouse*, 278 id. 481; *Fitzgerald* v. *Daly*, 284 id. 42; 4 Kent's Com. 261.

Appellant contends that the contingent nature of the remainder does not prevent it being devisable by will nor interfere with the operation of the rule in *Shelley's case*. We are unable to agree with this contention where the contingency applies to the person who is to receive the title, and we have definitely so held. Thus, in *DuBois* v. *Judy*, *supra*, we said: "It is only in cases where the contingency upon which the remainder is to vest is not in respect to the person but the event, and where the person who is to take if the event happens is ascertained, that the remainder may be granted or devised, but if the contingency is in the person who is to take, as where the remainder is limited to the heirs of one who is alive, there is no one who can make an effectual grant or devise of the remainder.—2 Washburn on Real Prop. (6th ed.) 527, sec. 1557." It is only when the identity of the remainderman is fixed and certain and the contingency appertains only to the uncertainty of the event that a conveyance or devise of the contingent remainder may be effected. Kent states the rule that if the person is not ascertained, contingent remainders can neither be devised nor descend at the common law, (4 Kent's Com. 261,) and this rule has been consistently followed by this court. (*Drury* v. *Drury*, *supra*; *Blackstone* v. *Althouse*, *supra*; *Fitzgerald* v. *Daly*, *supra*.) The contingency in the case we are considering was only as to the person or persons who might take. The event—*i. e.*, the death of Henrietta Ann Briegel—was certain to occur, and until the moment of her death no one could in law be an ascertained person qualified to convey or devise the remainder to this property.

In order to conform to appellant's theory of the case it would be necessary to enlarge upon and add to the rule in *Shelley's case*. The effect of that rule, when it applies, is to vest the fee in the ancestor instantly and instantly to

merge it with the freehold estate. If it does not apply in this. manner it cannot apply at all. The rule, stated in its most simple form, is, that if an estate of freehold is limited to A, with remainder to his heirs, general or special, the remainder, although importing an independent gift to the heirs as original takers, shall confer the inheritance on A, the ancestor. (Hayes on Conveyancing, (5th ed.) 542; *Johnson* v. *Buck*, 220 Ill. 226; *Peacock* v. *McCluskey*, 296 id. 87.) As stated by Coke (vol. 1, 104*a*) : "When the ancestor by any gift or conveyance takes an estate of freehold and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail, that always in such cases 'the heirs' are words of limitation of the estate and not words of purchase." · In the deed which we are considering it is apparent that no estate is limited either mediately or immediately to the heirs of the life tenant. There is nothing more than a provision for the remote contingency that such heirs may receive the estate if Henrietta Ann Briegel should live her life and die without issue of her body surviving her, and it would be an express enlargement upon the rule to hold that it, in derogation of the intent of the grantor, conferred any kind of an estate upon Henrietta other than that expressly given by the deed. In one of his greatest opinions (*Perrin* v. *Blake, supra,*) Blackstone points out that the rule in *Shelley's case* is intended to defeat the express intent of the grantor or testator. In this court we have held that where the rule in *Shelley's case* does not apply, we are left free to adopt a construction which will carry into effect the intention of the testator or grantor. *Hanes* v. *Central Illinois Utilities Co.* 262 Ill. 86.

Appellant relies upon Kales on Future Interests (sec. 440) as authority for the proposition that a remainder, being contingent, does not prevent the application of the rule in *Shelley's case.* The only authority cited by Kales in his text is *Hanes* v. *Central Illinois Utilities Co. supra,*

which clearly does not sustain so broad an interpretation as appellant contends for. In that case the devise was to William Thomas Keene for life and at his death to his children in fee if he left any child or children surviving, and if not, then to his heirs-at-law. He died intestate, leaving two children, having in his lifetime granted a right of way which was assigned to the utilities company. Keene's daughter having acquired full title from her brother, brought ejectment against the utilities company and recovered. The utilities company contended that Keene had acquired a fee by the original devise under the rule in *Shelley's case,* but this court rejected that theory, saying: "This contention cannot be sustained. To apply the rule in *Shelley's case* this will must be construed as devising to William Thomas Keene an estate for life with remainder to his heirs." The will plainly did not do so, any more than does the deed in the present case. In the *Hanes case* we further said: "In a devise to one for and during his natural life, with remainder to his 'child' or 'children' in fee, the rule in *Shelley's case* has no application and the court is left free to adopt a construction which will carry into effect the intention of the testator." This holding of the court disposed of the merits of the *Hanes case,* and anything further that was said therein was unnecessary to its decision.

The case of *Boon* v. *Boon,* 348 Ill. 120, is quite in point and we believe decisive of the present inquiry. The devise then before the court was to Elvin E. Boon for life, "and at his death it is my will that the fee in said premises shall vest in the heirs of the body of said Elvin E. Boon. Provided that if said Elvin E. Boon should die without children or descendants of children then said land at his death shall vest in his heirs-at-law and provided, that if any child or children, born to the said Elvin E. Boon shall die before his death leaving a child or children then such child or children shall take under this clause the same interest in said premises that the parent would otherwise

have taken." The testator died June 13, 1928, leaving Boon as his only heir, who was then forty years of age and had four living children. The cause came before the court on a bill to construe the will. We there held that the rule in *Shelley's case* had no application and that Boon would not at common law ·by the devise become seized of an estate in fee tail, and that section 6 of the Conveyance act therefore had no application; that the devise was to Boon for life with a contingent remainder to the heirs of his body in fee simple. In that case we said: "The proper construction of the will, so far as the real estate is concerned, is that Boon takes a life estate with remainder at his death to the heirs of his body, if any, the child or children, if any, of a child of Boon that dies in his lifetime to take the interest in the property that his or their parent would have taken, and in case Boon dies leaving no child or descendant of a child surviving him, then at his death the real estate to go to the heirs-at-law of Boon."

We are of the opinion that the trial court correctly interpreted the deed in question, and that its decree should be, and is therefore, affirmed. *Decree affirmed.*

Mr. JUSTICE FARTHING, dissenting:

I cannot agree with the conclusion reached by the majority opinion. A proper conclusion would be reached in this case if it were considered on the basis of the rule in *Shelley's case*. The opinion disposes of this rule by saying that it does not apply where the remainder is contingent. Among other cases, *Bails* v. *Davis,* 241 Ill. 536, is cited, but it does not support this proposition. The effect of its holding is that where the rule in *Shelley's case* applies, the contingent remainder cannot be cut off by merger. That is obviously a correct statement, because the remainder is vested in the ancestor by operation of the rule. Stated in another way, where the rule in *Shelley's case* applies there can be no contingent remainder to the heirs.

The primary inquiry in this case is whether the rule in *Shelley's case* applies to the grant made in the deed from Jacob Gehlbach to Henrietta Ann Briegel and Gustav Briegel. The language used is: "For and during their lifetime, then to the heirs of the body of our daughter, Henrietta Ann Briegel, and if she leaves no child or children surviving her, then to her heirs according to law." Henrietta Ann Briegel died leaving no children. The question then is whether the words "to her heirs according to law" are words of limitation or words of purchase.

It is elementary that words having a technical meaning must be given their technical meaning unless a contrary intention is shown. It is fundamental that if the words are used as words of limitation the rule in *Shelley's case* applies to vest the remainder in the ancestor. The words "to her heirs according to law" do not describe a class of purchasers but denote the whole line of succession from generation to generation. The language of the deed is such that the rule in *Shelley's case* should apply. But the majority opinion says that to apply the rule in this case would be "to enlarge upon and add to the rule in *Shelley's case*. The effect of that rule, when it applies, is to vest the fee in the ancestor instantly and instantly to merge it with the freehold estate." This is a misconception of the rule. The remainder to the heirs, and not the fee, is vested in the ancestor. Whether there is a merger depends upon whether there is an intervening estate. In the case at bar there could be no merger of the remainder and life estate because one-half of the life estate was in Gustav Briegel. The majority opinion refuses to follow a statement in Kales on Future Interests that the fact that a remainder is contingent does not prevent the application of the rule in *Shelley's case*. It says that *Hanes* v. *Central Illinois Utilities Co.* 262 Ill. 86, does not support the statement in Kales on Future Interests. The statement is dictum, because the case was one where the words used were not of limitation but of pur-

chase. The dictum is not erroneous, however. It is: "The rule in *Shelley's case* could apply to this devise only in case William Thomas Keene had died leaving no child or children surviving him, in which event the grant to Frith would have been binding upon his heirs." So in this case, the devise to Gustav Briegel should be binding upon the heirs of Henrietta Ann Briegel and those of Jacob Gehlbach.

The majority opinion places great reliance upon *Boon* v. *Boon,* 348 Ill. 120. An examination of that case will show that it is not in point and not contrary to the conclusion I have reached. The will there in question provides: "To my nephew, Elvin E. Boon, I will all my property, both real and personal and of every nature whatsoever for and during the term of his natural life with all the rights and incidents of a life estate therein, and at his death it is my will that the fee in said premises shall vest in the heirs of the body of said Elvin E. Boon. Provided, that if said Elvin E. Boon should die without children or descendants of children, then said land at his death shall vest in his heirs-at-law and provided, that if any child or children born to the said Elvin E. Boon shall die before his death leaving a child or children then such child or children shall take under this clause the same interest in said premises that the parent would otherwise have taken." Upon the death of the testator the life tenant had four living children. The circuit court construed the will to give the personal property to Boon as absolute owner and to devise a life estate in the real estate to him, with remainder to the heirs of his body. On appeal we held that the devise to the heirs of his body was so phrased as to be words of purchase and not of limitation, and therefore the rule in *Shelley's case* did not apply. This was correct, but it must be noted that the limitation to "his heirs-at-law" was not under consideration, and we did not hold that the rule in *Shelley's case* did not apply to it. We reversed the decree and remanded the cause with directions to enter a decree

construing the will as devising the land to Elvin E. Boon for life, with remainder in fee simple to the heirs of his body, if any, the child or children, if any, of a child of Boon that dies in his lifetime to take the interest in the property that his or their parent would have taken had he or she survived the life tenant, and in case Boon dies without leaving a child or descendant of a child him surviving, then at his death the real estate to go to his heirs-at-law; and also to construe the will as bequeathing the personal property to Boon for life, with a contingent remainder to the heirs of his body. There is no holding that the rule in *Shelley's case* does not apply to the alternative limitation to the heirs-at-law.

In principle the case at bar is not unlike that of *Ryan v. Allen*, 120 Ill. 648. There the devise was to Omar H. Allen, "the use or rents accruing from my house and one acre of land that said house stands upon, after his father's decease, provided his father does not sell said property, which privilege I grant him, provided it is necessary for his maintenance. After the said Omar H. Allen's decease the said house and land is to go to his nearest heirs." The power of sale was not exercised and the rule in *Shelley's case* was held to apply. So in this case, the contingency that Henrietta Ann Briegel died without leaving heirs of her body did not happen. The rule should also apply here. See, also, *Stewart v. Kennoyer*, 7 Watts & S. 288.

The devise to Gustav Briegel of the estate in fee should have been upheld.

Mr. JUSTICE STONE, also dissenting:

I do not concur in the conclusions reached in the majority opinion. While correctly stating that the rule in *Shelley's case* is a rule of law and not one of construction, the opinion, in considering the applicability of the rule, in effect treats it as a rule of construction. It is said that it was the testator's intention that the property descend "in

the Gehlbach blood, giving to her surviving husband only such portion as the laws of descent might provide." There is nothing in the deed to indicate that the grantor intended the property to descend in the Gehlbach blood alone, and such view appears not to have been advanced in the briefs of either side. The language of the deed, "and if she leaves no child or children surviving her, then to her heirs according to law," is apt language for the application of the rule in *Shelley's case.* The grant is to Ann Briegel for life and then to the heirs of her body surviving, with disposition to her heirs general on failure of surviving heirs of her body. By the words "heirs of her body" a grant is made to those heirs as a class, without explanation as to whether the word "heirs" means sons, children or the like. The word "heirs" is unrestricted, and so by all authorities is deemed to have been used in a technical sense, regardless of the intention of the grantor. The grant is in strict conformity with the requirements of the rule in *Shelley's case.* (*Bails* v. *Davis*, 241 Ill. 536; *Baker* v. *Scott*, 62 id. 86.) The words "heirs according to law" are to be regarded as words of limitation and not of purchase. There is nothing in the phrase qualifying the word "heirs." "Heirs," when so used, has been uniformly held to be a word of limitation and not of purchase. (*People* v. *Emery*, 314 Ill. 220; *Depler* v. *Dyer*, 312 id. 537; *Cook* v. *Sober*, 302 id. 498; *Ætna Life Ins. Co.* v. *Hoppin*, 249 id. 406; *Pease* v. *Davis*, 225 id. 408; *Deemer* v. *Kessinger*, 206 id. 57; *Fowler* v. *Black*, 136 id. 363; *Ryan* v. *Allen*, 120 id. 648; *Baker* v. *Scott, supra.*) Words in a deed or will are in law considered words of limitation when they define the extent or quality of the estate conveyed, and where the limitation is to heirs-at-law they take by descent, and the statute is resorted to to determine the persons upon whom the law casts the estate on the death of the ancestor. The heirs contemplated by the rule are those of the whole line of inheritable blood who are to take from generation to generation as heirs of the

one who takes the particular estate. The word "heirs" is a technical word with a fixed legal meaning, and, unless controlled by qualifying words so as to describe a different class of heirs from those who would take by virtue of the Statute of Descent, must be interpreted according to its strict technical meaning. *Cook* v. *Sober, supra; Richards* v. *Miller,* 62 Ill. 417; *Rawson* v. *Rawson,* 52 id. 62.

I cannot concur in the statement in the opinion that "the rule in *Shelley's case* does not apply where the remainder is contingent," and with deference I suggest that the cases cited in support of this conclusion of law do not afford such support. *Bails* v. *Davis, supra,* was a grant "to Joseph Kretzer and Mora Kretzer, his wife, during their natural lives and after their death to the heirs of said Joseph Kretzer." The rule in *Shelley's case* was held to apply, and I am unable to discover any statement in the opinion indicating that the rule does not apply where the remainder is contingent. So with the citation to Fearne on Contingent Remainders, page 25. The devise there described is declared to be one not in contingency or abeyance. No intimation is there given that the author considered that the rule in *Shelley's case* does not apply where contingent remainders are created by deed or will.

Other cases cited as holding that the rule in *Shelley's case* did not apply are based on the conclusion that the language used constituted such qualification or explanation of the word "heirs" as to restrict its meaning and forbid its use in the technical sense. These cases contain no hint that the non-applicability of the rule in *Shelley's case* is because of the existence of contingent remainders but because of the fact that the word "heirs" was not used in its technical sense. Language which so qualifies the word "heirs" as to restrict the meaning of the term to persons who may be the heirs at a particular time renders the word "heirs" a word not of limitation but of purchase. Such

was the holding in *Ætna Life Ins. Co.* v. *Hoppin, supra,* where the remainder was conveyed to the heirs of the body of Sarah Hoppin, "their heirs and assigns." It will be noted that the remainder was not to the heirs of Sarah Hoppin but to the heirs and assigns of the heirs of the body of Sarah Hoppin, thus creating new ancestors from whom the succession was to be derived and from whom an estate in fee simple descended. It is such a contingent remainder as is held not devisable in *DuBois* v. *Judy,* 291 Ill. 340, and *Benson* v. *Tanner,* 276 id. 594. It may be further observed that the devisability of contingent remainders is now provided by the Statute of Wills. Laws of 1829, sec. 1, p. 191.

I am unable to find any case or text book supporting the broad statement in the opinion that the rule in *Shelley's case* does not apply where a contingent remainder is created. On the other hand, in *Cook* v. *Sober, supra,* and *Ryan* v. *Allen, supra,* where a remainder, contingent because of a condition precedent to which it was subject, was considered, the rule in *Shelley's case* was held to apply. It was there further held that upon the occurrence of the contingency or performance of the condition the remainder would vest in the ancestor. (See, also, 1 Tiffany on Real Prop. 530, Kales on Future Interests, (2d ed.) sec. 440, and *Eby* v. *Shank,* 196 Pa. 426.) Preston, in his work on Estates, at page 266 states that it is immaterial to the application of the rule in *Shelley's case* whether the limitation to the heirs is to give a vested or contingent interest. This statement is, in effect, repeated on pages 315 and 324. In 2 Washburn on Real Property, (6th ed.) p. 562, it is said: "The mere fact that the remainder was contingent does not hinder the operation of the rule the moment the remainder vests." These authorities, together with Smith on Executory Interests, sec. 418, p. 212, 1 Hayes on Conveyancing, 544, and Challis on Real Prop. 163, all support the proposition that the rule in *Shelley's case* applies though the subsequent limitation of the estate be contingent.

The misconception, as I view it, arising in the majority opinion on this subject, lies in a failure to distinguish those cases where the deed or will conveys to heirs, or heirs of the body in the technical sense, from those where the gift or grant is to such as would be heirs at a certain time, or to children where the word "child" or "children" is used not in the sense of heirs but as distinguishing those taking from the heirs or heirs of the body as a class. This is the distinction upon which the decision in *Hanes* v. *Central Illinois Utilities Co.* 262 Ill. 86, is based. That case is not, therefore, in my opinion, authority for the statement in the majority opinion that the rule in *Shelley's case* does not apply to contingent remainders. As I understand the rule, where the word "heirs" or "heirs of the body" are used in their technical sense—and there is always a strong legal presumption that the word "heirs" is so used, (*Winter* v. *Dibble,* 251 Ill. 200, *Carpenter* v. *Hubbard,* 263 id. 571,)—they are words of limitation and not of purchase, and the rule that the ancestor takes the remainder so limited, and not the heirs, invariably applies; and this is so regardless of whether the remainder thus created was contingent. The requisites of the rule are: (1) A freehold estate in the ancestor; (2) a limitation of the remainder to the heirs or heirs of the body of the person taking the freehold estate, by the designation of heirs as a class, without words showing that the testator meant sons, daughters, children, etc.; (3) the estate of freehold and the remainder must be created by the same instrument; and (4) must be of the same quality—that is, both legal estates or both equitable estates. (*Bails* v. *Davis, supra; Lord* v. *Comstock,* 240 Ill. 492; *Baker* v. *Scott, supra.*) It seems to me clear that this conveyance fully meets all of these requisites.

I am also of the opinion that *Boon* v. *Boon,* 348 Ill. 120, on which the majority opinion places main reliance, should be further considered. In that case two alternative

contingent remainders were conveyed. At the death of the life tenant the property was to vest in the heirs of the body of Elvin E. Boon, provided if said Boon should die without children or descendants of children then the lands at his death should vest in his heirs-at-law, and further provided that if any child born to Boon should die before his death leaving a child or children, then such child or children to take under that clause the same interest that the parent would have taken. Elvin E. Boon was the only heir. He had four children at the time of the testator's death. The rule in *Shelley's case* was held inapplicable. The opinion in that case discusses the first devise, only. The effect of the devise to Elvin Boon's heirs in case he died leaving no children was not discussed, but the direction, on remandment, was to construe the will as "devising the land to Elvin E. Boon for life with remainder in fee simple to the heirs of his body, if any, the child or children, if any, of a child of Boon that died in his lifetime to take the interest in the property that his or their parent would have taken had he or she survived the life tenant, and in case Boon dies without leaving a child or descendant of a child him surviving, then at his death the real estate to go to his heirs-at-law." Under the authorities cited herein, the words "in case Boon dies without leaving a child or descendant of a child surviving him, then at his death the real estate to go to" the heirs-at-law of Boon, in the absence of explaining or qualifying words, conveyed a fee, under the rule in *Shelley's case,* to the life tenant, since those words as there used were words of limitation and not of purchase.

I am of the opinion that the decree in this case should be reversed.