HODAM v. JORDAN et al.
No. 778–D.

United States District Court
E. D. Illinois.
Jan. 13, 1949.

Henry I. Green, of Urbana, Ill., for plaintiff.

Busch & Harrington, of Champaign, Ill., for defendants.

LINDLEY, Chief Judge.

Andrew Jordan died June 28, 1901, leaving his last will and testament, executed July 5, 1898, and duly admitted to probate July 25, 1901, wherein he devised his real and personal estate to James A. Jordan and Charles A. Jordan, two of his sons, executors, "in trust," with power to lease, borrow money upon and mortgage the property, "the title to be held and vested in trust," "for the purpose of paying the entire encumbrance on said lands," "from the income," "as soon as convenient." Out of the rents and profits the trustees were to pay also taxes, insurance and cost of repairs, and to the testator's widow, "suitable sums" for her "comfort."

By the fifth paragraph the testator directed that, after payment of the encumbrances, the trustees should continue to pay the taxes, insurance and repairs and, then, "divide the income * * * among my children share and share alike, and in case of the death of any one of my children, the same to be paid to the heirs * * * share and share alike."

The Sixth paragraph provided that, after the death of three named children and payment of all encumbrances, "I hereby devise (my estate) to my said grandchildren and to the heirs of Charles A. Jordan and James A. Jordan," his two other children, "the heirs of each taking the share of such deceased parent, that is, such share as such deceased parent would take had not this will been made, share and share alike, it being my intention by this will that at that time and not before, the title to said real estate shall vest in the heirs of my children or their descendants, and in case of the death of any of my heirs, the children and heirs of each taking the share of the deceased parent, share and share alike."

The encumbrances having been discharged and the five children of the testator having died, a partition suit was instituted in the state court and eventually removed to this court. The only question presented is as to the character and quality of the estate of Rolla A. Jordan, grandson of the testator and son of James A. Jordan, one of the sons of the testator. Rolla was duly adjudicated bankrupt on December 2, 1920. He scheduled "an interest in" the real estate of which the testator had died seized. His trustee in bankruptcy, later, by order of court, sold and conveyed that interest in to R. M. Hodam. Rolla's father died in 1927. Rolla now claims the 1/25th interest which

he would now own had he not been in bankruptcy, saying that the deed of the trustee in bankruptcy was wholly without legal effect. Sadie B. Hodam, plaintiff, devisee of R. M. Hodam, the purchaser at the bankruptcy sale, claims the interest on the theory that it vested first in Rolla and then passed to his trustee in bankruptcy and was properly sold and conveyed to her devisor. Specifically, plaintiff Hodam claims that the remainder was vested in Rolla from the beginning, while Rolla, defendant, asserts that it was a contingent remainder, which, under the Illinois decisions, did not pass to his trustee in bankruptcy, and did not vest in him until certain contingencies later disappeared. The property has been sold at partition sale, and the proceeds of sale, by stipulation of the parties, are to stand and be disposed of by the court in lieu of the real property. The court has jurisdiction, inasmuch as diversity of citizenship exists and the amount in controversy is in excess of $3000.

▆▆▆▆ If the interests of Rolla and the testator's other grandchildren created by the will were contingent upon the ultimate takers surviving the payment of all encumbrances, it is probable that the trust violated the rule against perpetuities as it has been applied in the state of Illinois. Thus, in Johnson v. Preston, 226 Ill. 447, 80 N.E. 1001, 1003, 10 L.R.A.,N.S., 564, the court held void a gift to continue for the space of 25 years "from and after the date of the probate of this will," upon the reasoning that probate of the will, a condition precedent to the effectiveness of the gift, might not occur within the limits prescribed by the rule. See also Ryan v. Beshk, 339 Ill. 45, 47, 170 N.E. 699. However, that such is not universally the law, is apparent from Belfield v. Booth, 63 Conn. 299, 27 A. 585. There a similar gift was declared valid. Gifts to take effect after the payment of debts, if contingent upon the survivorship of that event, are equally subject to objection under the English authorities and according to the teaching of Professor Gray· Carey & Schuyler, Future Interests, Section 489, Note 71. On the other hand such gifts have always been upheld in this state when the interests created by them are vested. Scofield v. Olcott, 120 Ill. 362, 11 N.E. 351. Such terms as "when" or "after" when used in connection with the creation of the gift are said to relate to the time of enjoyment and not to the time of vesting. Heisen v. Ellis, 247 Ill. 418, 93 N.E. 362. In the present case, we find even stronger language, for the testator has said that title of the remainder-man "shall vest" at the time of enjoyment "and not before." However such expressions are not always conclusive that vesting is to be postponed· Carey & Schuyler, supra, p. 295. And it is well established in Illinois that the law favors the early vesting of estates. Murphy v. Westhoff, 386 Ill. 136, 53 N.E.2d 931. While the decision of the Connecticut court in Belfield, supra, would permit the gift to stand against the rule against perpetuities on the theory that at all events the trustees shall pay the testator's debts within 20 years from the testator's death, we can not ignore the binding effect of Johnson v. Preston, supra. Because of this threat to the validity of the trust, I am inclined and it is my duty, I think, to hold that the interest vested at the earliest possible moment.

▆▆▆▆ We should consider also, before reaching the ultimate question, the proposition that if the testator used the word "heirs" in its technical sense, the question immediately arises as to whether the rule in Shelley's case applied. Here was a gift of income to the testator's children followed by a gift over, at their deaths "to my said grandchildren and to the heirs of Charles A. Jordan and James A. Jordan." Of course, if real property is given to A for life, remainder to the life-tenant's heirs, the rule in Shelley's case vests the remainder in fee in A, irrespective of whether the life estate and the remainder are legal or equitable, so long as they are of the same character. McFall v. Kirkpatrick, 236 Ill. 281, 86 N.E. 139; Richardson v. Roney, 382 Ill. 528, 47 N.E. 2d 714, expressly overruling Gehlbach v. Briegel, 359 Ill. 316, 194 N.E. 591. Whatever estates James A· Jordan and the other children of the testator may have taken as beneficiaries in the trust created, there would seem to be no doubt that they were

equitable. So also was the "remainder" to the children's "Heirs," for I think there is no doubt that the trustees, having been given power to mortgage, took the legal fee. As is said in Nowlan v. Nowlan, 272 Ill. 526, 112 N.E. 259, 261, "an express devise of the trust estate to a trustee coupled with the power to sell necessarily vests the trustee with the fee", and in Harvey v. Ballard, 252 Ill. 57, 96 N.E. 558, if the will shows an intention that the trustee shall have power to mortgage and lease, the trustee necessarily takes the fee. To the same effect is Restatement of Trusts, Vol. 1, Section 88(1). The law is summarized by Carey & Schuyler, Section 99, p. 171, in this statement: "Powers to sell, to mortgage, to convey at the end of the trust or to make long term leases will be regarded not as mere powers but as a grant."

I think that for other reasons, the rule in Shelley's case is not applicable. The estate of Rolla's father appears to be, at most, an estate pur autrie vie, i. e. for the lives of the three named children, whose lives were to measure the life of the trust. The other beneficiaries were to take nothing unless and until all encumbrances on the property devised had been discharged, and even if it could be assumed that an estate pur autre vie in the ancestor would support the application of the rule in Shelley's case to the gift with remainder to the heirs, the direction to pay encumbrances in the instant case is persuasive that the gift is an executory one to which the rule would not apply. Smith v. Thomas, 317 Ill. 150, 147 N.E. 788. Then again it seems clear that by the gift over to the "heirs" of the first takers here, the testator had reference to their children (Carey & Schuyler, supra, pp. 163, 164, 214, 218), in which event the rule in Shelley's case would obviously be inapplicable. I am of the opinion that the rule in Shelley's case does not apply.

If the remainders were limited to "heirs" in the technical sense, of the life tenants, then, as I have indicated, the rule in Shelley's case applies. But, examination of the fifth and sixth clauses would seem to make it certain that the testator did not use the word "heirs" in its technical sense. In the fifth clause, he said: " * * * divide the income * * * among my children * * *, and in case of the death of any one of my said children, the same to be paid to the heirs or in case of minority to the legal guardian of such child or children, * * *." The last phrase clearly indicates that by the word "heirs" the testator meant children. Taking into consideration the language of the entire instrument as well as that of the sixth clause, I think the testator intended this:

"After the death of my children, I devise to my grandchildren such share as their deceased parent would have taken had this will not been made, it being my intention that at that time (i. e. after the death of my children), and not before, the title (i. e. legal title) to said real estate shall vest in my *grandchildren or their descendants,* and that in case of the death of any of my children, the children of such child shall take the share of the deceased parent."

Although the testator used the word "heirs" more than once, I think it is clear from the context that in each instance he employed the word to express the meaning of either "grandchildren" or "descendants." If this construction is correct, then, as I have indicated, the rule in Shelley's case is inapplicable, irrespective of whether the trustees took a legal life estate or a legal fee. Thus, Rolla Jordan took immediately an equitable remainder. The question remaining is whether, at the time Rolla was adjudicated a bankrupt, this remainder was indefeasibly vested, or vested subject to divestiture, or whether it was contingent.

In the first sentence of the sixth paragraph of the will there is a devise to grandchildren, the grandchildren taking the share their parents would have taken had no will been made. To my mind, this gave the grandchildren a vested remainder, subject to open to let in any grandchildren born later. If the testator had stopped there, we would have no trouble. But, he proceeded to say, "It being my intention by this will that *at that time and not before*

*the title to said real estate shall vest*[1] in the heirs of my children or their descendants." The words "at that time" clearly refer to the death of testator's last surviving child, at which time the trust was to terminate. Does this mean that he intended that the remainder be contingent until the death of the last life tenant? In Spengler v. Kuhn, 212 Ill. 186, 72 N.E. 214; Cummings v. Hamilton, 220 Ill. 480, 77 N.E. 264; Campbell v. Campbell, 380 Ill. 22, 42 N.E.2d 547; People v. Byrd, 253 Ill. 223, 97 N.E. 293; White v. White, 312 Ill.App. 628, 39 N·E.2d 79, and Johnston v. Herrin, 383 Ill. 598, 50 N.E.2d 720, the court found the remainder to be contingent because, under the language of the instrument involved, it was impossible to determine who would take until the life tenant died. The word "surviving," a word which limited the gift and the donee, was the stone in the way and in each instance was held to preclude the vesting of the gift until it could be determined who the donees would be.

In the present case we have no such limiting terms of survivorship, but we do have the provision "that at that time and not before the title shall vest." In Carey & Schuyler, Section ·295, the authors cite Spengler v. Kuhn, supra, as an example of a case where the court was overly influenced by express directions as to vesting. Then they cite cases in which directions that title "shall vest" have not made contingent the future interests created. They express the view that the meaning of the word "vest" may depend in part upon the knowledge of property law evidenced by the instrument construed.

The governing rules seem clear from the following Illinois authorities· In Flanner v. Fellows, 206 Ill. 136, 68 N.E. 1057, under the devise in trust to pay the income "to my sister * * * during her life, and after her death * * * to her children," the court held that the sister took a life estate and her children a vested remainder subject to open to let in any children subsequently born to her. In Smith v. Shepard, 370 Ill. 491, 19 N.E.2d 368, 369, in a devise, "To my beloved wife" for life and upon her death, "all of my estate then remaining shall be divided equally among my children, share and share alike, the descendants of any desceased child to take the parent's share," the court held that the children had vested remainders, subject to an executory devise over in case they predeceased the life tenant. In Knight v. Pottgieser, 176 Ill. 368, 52 N.E· 934, in a devise "unto my well-beloved wife" for life, "and upon and at her death the same to go to, and be divided amongst, my children and their descendants, in equal shares, the descendant or descendants of a deceased child to take the parent's share in equal proportions", the court held that the children had vested remainders. In Lachenmyer v. Gehlbach, 266 Ill. 11, 107 N.E. 202, 203, the gift was "to my wife" for life and after her death "to my children, share and share alike, and shall any of my children die, then the children of such deceased child, should any children be surviving such deceased child, to take the share of the parent so deceased; and should any of my children die leaving no issue, then the share of such deceased child shall be divided equally among my surviving children." The court held that the children had vested remainders, subject to shifting executory devises over in the event any of them should die prior to the life tenant. In Warrington v. Chester, 294 Ill. 524, 128 N.E· 549, under a devise to my wife for life, remainder to my children, the issue of any children who may be then deceased taking the share to which such deceased child would be entitled to *if living*, the court held that the children had vested remainders, subject to executory devises over, if the remainderman should die prior to the life tenant, leaving issue. In Jordan v. Jordan, 274 Ill. 251, 113 N.E. 631, L.R.A.1917 D, 563, the court had before it the will involved here. Page 255 of the opinion in 274 Ill., page 632 of 113 N.E., contains dicta to the effect that the grandchildren took vested remainders· In Fleshner v. Fleshner, 378 Ill. 536, 39 N.E.2d 9, 10, the devise was to the wife for life, and after her death to the children (naming them), *or*

---

[1] I have supplied the italics wherever they appear in this memorandum.

*the surviving heirs of their body"*. Again the court held the remainder to the children vested. The court reiterated Gray's "whenever and however" rule as the test for determining when a remainder is vested, and distinguished Schaffenacker v. Beil, 320 Ill. 31, 150 N.E. 333, and People v. Byrd, 253 Ill. 223, 97 N.E. 293, on the ground that the wills in those cases contained words of condition precedent.

In Danz v. Danz, 373 Ill. 482, 26 N.E.2d 872, 873, the devise was "unto my beloved wife" for life or until remarriage, and upon her death or re-marriage, "then all of said property hereinbefore bequeathed to her *shall be vested* in my nephew * * * and niece * * *, share and share alike, and in the event of the death of my said nephew * * * prior to the death or re-marriage of my wife," then over. The court held the remainder vested subject to being divested. The words "shall be vested" were ignored.

In Northern Trust Co. v. Wheaton, 249 Ill. 606, 94 N.E. 980, 981, 34 L.R.A.,N.S., 1150, there was a devise in trust for the joint lives of his wife and sister, then in absolute ownership to ten persons, naming them. "In the event of the death of any of the ten persons above named as beneficiaries *before the interest in my estate shall vest in them,* leaving a child or children surviving *at the time my said estate shall vest,* then said child or children of such deceased person shall take their parents' share; Provided, however, *in the event that at the time my said estate shall vest,* any of the above named beneficiaries shall be minors," the trust shall be continued as to such minors' interest until they attain their majority. The court held that the ten beneficiaries had vested remainders.

▮ The last two cases seem to substantiate clearly the statement made in Section 295 of Carey & Schuyler, supra, to the effect that directions as to vesting alone and in the absence of other expressions importing contingency, will seldom if ever defer vesting, unless it is clear from the instrument under consideration that the word "vest" was used in a technical sense. See also Chapman v. Cheney, 191 Ill. 574, 61 N.E. 363. In our case it seems obvious to me from the manner such words as "heirs," "children," and "descendants," were indiscriminately employed, that the draftsman frequently used words in other than their technical sense. Furthermore, there are circumstances within . the instrument explaining why the specific language was used. When the testator said, "at that time and not before title shall vest," he undoubtedly meant "legal title" because, until the trust terminated, legal title was in the trustees. This provision did not prevent the grandchildren from taking equitable vested remainders. I think that is what the testator actually intended. He desired to make sure that no part of the trust terminated at an earlier period than that fixed. Otherwise, it might well have followed that, as each of his children died, the trust would terminate pro tanto, with the deceased child's children becoming entitled to their respective shares of the legal fee.

▮ The following quotation from Murphy v. Westhoff, 386 Ill. 136, 140, 53 N.E.2d 931, 933, is typical of the language running through the Illinois cases discussing vesting of estates:

"The rule is established by many authorities that estates devised will vest at the death of the testator, unless a later time for vesting is clearly indicated by the express words of the will, or is necessarily implied therefrom (citing cases). Where, in the construction of a will, there is doubt as to the point of time it was intended the estate should vest, the earliest will be taken. The law favors the early vesting of estates. It has long been the settled rule of construction that estates, legal or equitable, given by will, should be regarded as vesting immediately unless the testator has, by very clear words, manifested an intention that they should be contingent on a future event (citing cases)."

▮ Remembering that Illinois is committed to the rule favoring the early vesting of estates; that no express words of survivorship were used; that the testator's chief purpose was to keep the estate intact until all the indebtedness had been

paid; and that the provision as to the vesting of legal title is entirely consistent with a holding that the equitable remainder was vested, I conclude that Rolla's remainder was, at all times, vested, subject to being divested.

Rolla contends that, even if he had a vested remainder, it did not pass to his trustee in bankruptcy because of the so-called spendthrift provisions of the will and because of the provisions of Section 49 of the Chancery Act, Ill.Rev.Stats., Chap. 22, Section 49. I shall discuss the latter contention first. Shortly, Section 49 provides that a judgment creditor cannot, by a creditor's bill, reach his debtor's interest in a trust if the trust was, in good faith, created by some person other than the debtor. Prior to the decision in Baumgarden v. Reconstruction Finance Corporation, 7 Cir., 131 F.2d 741, it had been generally thought that in such cases, the creditor's remedy was garnishment. But that case held that the statute destroyed that remedy. Then, in 1944, the Illinois Supreme Court, in Dunham v. Kauffman, 385 Ill. 79, 52 N.E.2d 143, 154 A.L.R. 90, held that the debtor's interest was not subject to attachment. The result is that in Illinois, even though the trust is a non-spendthrift trust, a creditor cannot reach the debtor's interest. Then came the case of Hummel v. Cardwell, 390 Ill. 526, 62 N.E.2d 433, in which the court said that a trustee in bankruptcy is in no better position to reach the trust than a creditor and so is equally precluded by Section 49. However, in Knight v. Gregory, 389 Ill. 554, 560, 60 N.E.2d 399, the court said that Section 49 of the Chancery Act is not an exemption statute. Hence, there would seem to be no obstacle to the beneficiary's interest passing to his trustee in bankruptcy. If, under state law, the beneficiary had an equitable vested interest which he could voluntarily transfer, then it should pass to his trustee in bankruptcy, irrespective of the provisions of Section 49 of the Chancery Act. Thus, in Martin v. McCune, 318 Ill. 585, 149 N.E. 489, the court held that a debtor's interest under a trust was vested, and hence that it passed to his trustee in bankruptcy. Section 49 of the Chancery Act was not mentioned.[2]

Remaining is the question of whether Rolla's vested remainder was protected by a spendthrift trust. This seems to be an afterthought on the part of counsel, as it was never mentioned until the brief was filed. The fifth paragraph of the will provides that after all the encumbrances shall have been paid, the trustees shall divide the income among testator's children, the child or children of a deceased child taking the parent's share. *"The shares from said income* to be paid in money to the parties entitled to the same and to be paid to them in their own hands and not upon any written or verbal order, nor upon any assignment or transfer by my said children or grandchildren." Though this is definitely a restraint against voluntary transfer by the beneficiaries, it applies only to the income during the existence of the trust; the will contains no restraint against involuntary alienation. The testator could have, through spendthrift provisions, protected the remainder, at least during the existence of the trust. Von Kesler v. Scully, 267 Ill.App. 495. Counsel rely heavily on the Von Kesler case in support of Rolla's contention. In that case, the debtor had an interest in the income of a testamentary trust and also a vested remainder in the corpus of the trust estate. A creditor tried to reach the beneficiary's interest, including the vested remainder. In a short paragraph near the end of the opinion, as an additional ground for denying the creditor any relief, the court stated that Section 49 of the Chancery Act prevented the creditor from reaching any part of the trust estate so long as it remained in the hands of the trustee. However, the major part of the opinion dealt with the question of whether the spendthrift clause of the will prevented the creditor from reaching the trust estate. The pertinent parts of the spendthrift clause were as follows:

"I expressly direct that my said trustee shall *pay all such income* into the hands of each beneficiary, * * * and not upon

---

[2] This whole problem is thoroughly discussed in 41 Ill.Law Review, 214–227.

any written or verbal order, nor upon any assignment or transfer by such beneficiary; that no beneficiary herein shall have the right to sell, alien, pledge or assign *his or her interest in said trust estate, or any part thereof,* and *no person shall acquire any right, title or interest of any beneficiary in said trust estate* by reason of any sale, assignment, transfer, claim or judgment against such beneficiary, whether voluntary or involuntary." The court held that the spendthrift clause protected both the income and the corpus of the estate, and that such a clause is valid in Illinois (citing cases). It should be observed that there was a restraint against alienation of the income and against alienation, voluntary or involuntary, of any interest in the trust property. Such is not our case. We have only a restraint against voluntary alienation of the trust income. I am not justified in enlarging that provision into a restraint against alienation of Rolla's vested remainder. Hence, I hold that Rolla's vested interest passed to his trustee in bankruptcy.

Even though Rolla's interest was probably subject to divestment at the time he was adjudicated a bankrupt, that fact would not prevent the remainder from passing to his trustee, for in Illinois, vested interests subject to be divested, are clearly subject to the execution process. Ducker v. Burnham, 146 Ill. 9, 34 N.E. 558, 37 Am.St.Rep. 135. That the interest may technically have been executory in character rather· than a remainder, I consider of no importance, for like interests have been regarded in Illinois as vested. Howe v. Hodge, 152 Ill. 252, 38 N.E. 1083. They are surely interests which may be transferred by a bankrupt and accordingly pass to the trustee as provided by the Bankruptcy Act, 11 U.S.C.A· § 110, sub. a(4).

Rolla asserts that the interest was of such character that Hodam, the grantee in the trustee in bankruptcy's deed, could not devise it under the laws of Illinois, citing certain cases. But my conclusion that the interest of Rolla was at all times vested, disposes of the premises upon which this argument rests. Being vested, the interest was clearly subject to devise.

The foregoing shall constitute my findings of fact and conclusions of law. If more formal findings and conclusions of law in accord with what I have said are desired, they may be submitted by counsel. Judgment in conformity with the foregoing may be submitted by counsel.